**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

TREVOR COOMBS, MARK GITTENS, and                    Case No.
SANJER PANTRY and, *on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

                              Plaintiffs,          **CLASS AND COLLECTIVE ACTION**
                                            **COMPLAINT**

       -against-                                         **Jury Trial Demanded**

KA INVESTIGATIONS-SECURITY LLC
 and KELVIN ALEXANDER,

                              Defendants.
-------------------------------------------------------------X

       Plaintiffs TREVOR COOMBS ("COOMBS"), MARK GITTENS ("GITTENS"), and

SANJER PANTRY ("PANTRY") (collectively, "Plaintiffs") allege on behalf of themselves and

others similarly situated, against KA INVESTIGATIONS-SECURITY LLC ("KA

INVESTIGATIONS") and KELVIN ALEXANDER ("KELVIN ALEXANDER") (collectively,

"Defendants"), upon information and belief, as follows:

<u>**NATURE OF THE CLAIMS**</u>

1. COOMBS was employed by the Defendants as a non-exempt employee from

   approximately December 2019 to February 10, 2021. COOMBS' schedule varied and he

   worked anywhere from 45 hours per week to 54.5 hours per week. From December 2019

   to February 2021, COOMBS was paid $15.00 per hour. Despite working in excess of

   forty hours per week and ten hours per day, COOMBS was not paid overtime or spread-

   of-hours.  Furthermore, Defendants committed statutory wage violations, by failing to

   provide COOMBS with a wage notice or a proper wage statement.

2. GITTENS was employed by the Defendants as a non-exempt employee from

   approximately June 2018 to November 19, 2021.  From June 2018 to November 19,

2021, GITTENS would work five days per week (Monday to Friday). GITTENS' schedule varied and he worked anywhere from 45 hours per week to 57.5 hours per week. From June 2018 until April 2019, GITTENS was paid $14.00 per hour.  From April 2019 until November 2021 GITTENS was paid $15.00 dollars per hour.  Despite working in excess of forty hours per week and more than ten hours per day, GITTENS was not paid overtime or spread-of-hours.  Furthermore, Defendants committed statutory wage violations, by causing GITTENS to file a false information return and by failing to provide GITTENS with a wage notice or a proper wage statement.

3. PANTRY was employed by the Defendants as a non-exempt employee from approximately August 2018 to December 3, 2021.  From August 2018 to December 3, 2021 PANTRY worked 6 days per week (Monday-Saturday). PANTRY's schedule varied and he worked anywhere from 45 hours per week to 59 hours per week. From August 2018 to August 2019 PANTRY was paid either $13.00 or $15.00 per hour. From August 2019 until May 2021 PANTRY was paid $15.00 per hour. From May 2021 until December PANTRY was paid $17.00 per hour.  Despite working in excess of forty hours per week and ten hours per day, PANTRY was not paid overtime or spread-of-hours. Furthermore, Defendants committed statutory wage violations, by causing PANTRY to file a false information return and failing to provide PANTRY with a wage notice or a proper wage statement.

4. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA") that they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime, (2) liquidated damages and (3) attorneys' fees and costs.

5. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL") that they and others similarly situated, are entitled to recover from Defendants: (1) unpaid minimum wage, (2) unpaid overtime, (3) unpaid spread-of-hours premium, (4) statutory penalties for wage notice violations, (5) statutory penalties for IRS violations, (6) liquidated damages and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this district.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

9. Plaintiff TREVOR COOMBS ("COOMBS") was and is a resident of Kings County, New York.

10. Plaintiff MARK GITTENS ("GITTENS") was and is a resident of Queens County, New York.

11. Plaintiff SANJER PANTRY ("PANTRY") was and is a resident of Queens County, New York.

12. Defendant KA INVESTIGATIONS-SECURITY LLC ("KA INVESTIGATIONS") was and is a domestic limited liability company existing under the laws of the State of New York, with a service of process address located at 534 Van Duzer Street, Staten Island

NY 10304.

13. KA INVESTIGATIONS performed subcontracting work at Rockaway Avenue, in Queens County.

14. KA INVESTIGATIONS performed subcontracting work at 134th Avenue, in Queens County

15. KA INVESTIGATIONS performed subcontracting work at Baisely Park, in Queens County.

16. KA INVESTIGATIONS performed subcontracting work at 155th Avenue, in Queens County.

17. KA INVESTIGATIONS performed subcontracting work at 154th Avenue, in Queens County.

18. KA INVESTIGATIONS performed subcontracting work at 153th Avenue, in Queens County.

19. KA INVESTIGATIONS performed subcontracting work at Guy Brewer Avenue, in Queens County.

20. KA INVESTIGATIONS performed subcontracting work at 137 Linden Boulevard, Brooklyn NY 11226.

21. KA INVESTIGATIONS performed subcontracting work at Dialysis Center at the Brooklyn Brookdale Campus, in Kings County.

22. KA INVESTIGATIONS performed subcontracting work at Well Life Network Halfway House, located ta 44 Elmont Road in Elmont New York.

23. KA INVESTIGATIONS performed subcontracting work at 9701 Church Avenue, in Kings County.

24. KA INVESTIGATIONS performed subcontracting work at 2600 Hylan Blvd in Richmond County.

25. KA INVESTIGATIONS performed subcontracting work at 138 Wiloughby Street in Kings County.

26. KA INVESTIGATIONS performed subcontracting work at 3302 Skilman Avenue in Queens County.

27. At all times relevant to this action, KA INVESTIGATIONS has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.00.

28. Defendant KELVIN ALEXANDER ("ALEXANDER"), upon information and belief, was and is a resident of the State of New York.

29. At all times relevant to this action, ALEXANDER was and is the Owner of KA INVESTIGATIONS.

30. ALEXANDER exercised control over the employment terms and conditions of the Plaintiffs, FLSA Collective Plaintiffs and Class Members.  ALEXANDER had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of the Plaintiffs, FLSA Collective Plaintiffs and Class Members.  At all times, employees could complain to ALEXANDER directly regarding any of the terms of their employment, and ALEXANDER would have the authority to effect any changes to the quality and terms of employees' employment.  ALEXANDER exercised functional control over the business and financial operations of KA INVESTIGATIONS.

31. The acts of KA INVESTIGATIONS charged in this Complaint were authorized, directed

or accomplished by ALEXANDER individually, by himself or her agents, officers, employees or representatives, while actively engaged in the management of KA INVESTIGATIONS's business.

32. At all relevant times, KA INVESTIGATIONS was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and the regulations thereunder.

33. At all relevant times, the work performed by the Plaintiffs, FLSA Collective Plaintiffs and Class Members was directly essential to the businesses operated by the Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

34. Plaintiffs brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including construction team members, universal construction verification technicians, cleanup foremen, fireguards and laborers, employed by Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein (the "Class period").

35. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices and procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek.  The claims of the Plaintiffs stated herein are essentially the same as those of the FLSA Collective Plaintiffs.

36. The claims for relief are properly brought under and maintained as an opt-in collective

action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).  The FLSA Collective

Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to

this action, their names and addresses are readily available from Defendants.  Notice can

be provided to the FLSA Collective Plaintiffs via first class mail for the last address

known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

37. Plaintiffs also bring claims for relief pursuant to the Federal Rules of Civil Procedure

("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including construction

team members, universal construction verification technicians, cleanup foremen,

fireguards and laborers, employed by Defendants on or after the date that is six years

before the filing of the Complaint in this case as defined herein (the "Class period").

38. All said persons, including the Plaintiffs, are referred to herein as the "Class."  The Class

members are readily ascertainable.  The number and identity of the Class members are

determinable from the records of Defendants.  The hours assigned and worked, the

positions held, and the rate of pay for each Class member are also determinable from the

Defendants' records.  For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants.  Notice can be provided

by means permissible under F.R.C.P. Rule 23.

39. The proposed Class is so numerous that a joinder of all members is impracticable, and the

disposition of their claims as a class will benefit the parties and the Court.  Although the

precise number of such persons is unknown, and the facts on which the calculation of that

number are presently within the sole control of Defendants; upon information and belief,

there are in excess of twenty (20) Class Members.

40. The Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate action.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation, (ii) failing to pay spread of hours premium, (iii) failing to provide proper wage statements per requirements of the NYLL, and (iv) failing to provide proper wage and hour notices, at date of hiring and annually, per requirements of the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  The Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

41. The Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  The Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

42. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.   Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis,

the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress to wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of the individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for the Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

43. Defendants and other employers throughout the state violate the NYLL.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

44. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a) Whether Defendants employed the Plaintiffs and Class members within the meaning of the NYLL;

(b) What are and were the policies, practices, programs, procedures, protocols and plans of the Defendants regarding the types of work and labor for which the Defendants did not pay the Class members properly;

(c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Plaintiffs and Class members for their work;

(d) Whether Defendants properly notified the Plaintiffs and Class members of their hourly rate and overtime rate;

(e) Whether Defendants paid the Plaintiffs and Class members the proper overtime compensation under the NYLL;

(f) Whether Defendants paid the Plaintiffs and Class members the spread of hours premium as required by the NYLL;

(g) Whether Defendants provided proper wage statements to the Plaintiffs and Class members per requirements of the NYLL; and

(h) Whether Defendants provided proper wage and hour notices to the Plaintiffs and Class members, at date of hiring and annually, as required by the NYLL.

### STATEMENT OF FACTS

**Wage Claims for COOMBS**

45. From approximately December 2019 to February 10, 2021, COOMBS was employed on a full-time basis by the Defendants.

46. COOMBS was a non-exempt employee.

47. COOMBS worked for the Defendants at various locations throughout Queens County.

48. Some of the Queens County locations that COOMBS worked at included but were not

limited to: Rockaway Avenue, 134th Avenue, Baisely Park, 155th Avenue, 154th Avenue, 153th Avenue, and Guy Brewer Avenue.

49. COOMBS was employed on the Northeast Remsco Construction team from December 2019 to February 10, 2021.

50. COOMBS was employed as a "flagger" from approximately December 2019 to February 10, 2021.

51. COOMBS worked 5 days per week, Monday through Friday.

52. During COOMBS's employment with the Defendants, COOMBS worked in excess of forty (40) hours per week.

53. During COOMBS's employment with Defendants, COOMBS would also work in excess of ten hours per day.

54. COOMBS' schedule varied and he worked anywhere from 45 hours per week to 54.5 hours per week.

55. COOMBS was not permitted to take a lunch break although he was entitled to a ½ hour lunch break.

56. Upon his hire COOMBS was told that if he worked through lunch he would be permitted to leave early.

57. Although he consistently worked through his lunch break COOMBS was not permitted to leave early.

58. Despite not taking a lunch break, time for lunch was consistently deducted from COOMBS' paycheck.

59. From December 2019 to February 2021, Defendants paid COOMBS $15.00 per hour.

60. Defendants paid COOMBS by paycheck.

61. COOMBS was paid once every two weeks on Thursdays.

62. The Defendants did not provide a wage notice to COOMBS upon his hire or annually.

63. The Defendants did not provide COOMBS with a proper accurate wage statement with each payment he received.

64. Although COOMBS worked over forty hours per week, Defendants failed to pay COOMBS at the required overtime premium rate.

65. Although COOMBS worked daily shifts in excess of ten hours, Defendants failed to pay COOMBS spread-of-hours.

**Wage Claims for GITTENS**

66. From approximately June 2018 to November 19, 2021, GITTENS was employed on a full-time basis by the Defendants.

67. GITTENS was a non-exempt employee.

68. GITTENS worked for the Defendants at 137 Linden Boulevard, Brooklyn NY 11226.

69. GITTENS was employed as a security guard.

70. GITTENS worked 5 days per week, Monday through Friday.

71. During GITTENS's employment with the Defendants, GITTENS worked in excess of forty (40) hours per week.

72. During GITTENS's employment with Defendants, GITTENS would also work in excess of ten hours per day.

73. GITTENS' schedule varied and he worked anywhere from 45 hours per week to 57.5 hours per week.

74. GITTENS was not permitted to take a lunch break although he was entitled to a ½ hour lunch break.

75. Upon his hire GITTENS was told that if he worked through lunch he would be permitted to leave early.

76. Although he consistently worked through his lunch break GITTENS was not permitted to leave early.

77. Despite not taking a lunch break, time for lunch was consistently deducted from GITTENS' paycheck.

78. Defendants paid GITTENS by paycheck and by personal check.

79. From June 2018 to April 2019, Defendants paid GITTENS $14.00 per hour.

80. From April 2019 to November 2021, Defendants paid GITTENS $15.00 per hour.

81. GITTENS was paid once every two weeks on Thursday.

82. Defendants frequently neglected to pay GITTENS on time or at all.

83. Defendants frequently paid GITTENS weeks late.

84. GITTENS frequently had to ask Defendant ALEXANDER if he would be getting paid for the week.

85. GITTENS frequently had to follow up with Defendant ALEXANDER about wages that Defendants owed to GITTENS.

86. GITTENS frequently had to remind and request that Defendants pay GITTENS the wages he was owed.

87. On several occasions Defendants shorted GITTENS' paycheck, meaning Defendants failed to pay GITTENS in full, for all he hours worked.

88. Frequently GITTENS was forced to work several weeks without being paid.

89. As a result of not being paid in full or at all, GITTENS complained to Defendants about their unfair pay practices.

90. In or around Friday September 24, 2021, GITTENS complained to Defendant ALEXANDER via text message that his paycheck was short and missing payment for all the hours he worked.

91. Frequently Defendants ignored GITTENS' requests, reminders, complaints, and GITTENS did not receive payment.

92. The Defendants did not provide a wage notice to GITTENS upon his hire or annually.

93. The Defendants did not provide GITTENS with a proper accurate wage statement with each payment he received.

94. Although GITTENS worked over forty hours per week, Defendants failed to pay GITTENS at the required overtime premium rate.

95. Although GITTENS worked daily shifts in excess of ten hours, Defendants failed to pay GITTENS spread-of-hours.

**<u>Wage Claims for PANTRY</u>**

96. From approximately August 2018 to December 3, 2021, PANTRY was employed on a full-time basis by the Defendants.

97. PANTRY was a non-exempt employee.

98. PANTRY worked for the Defendants at various locations throughout New York City.

99. Some of the locations that PANTRY worked at included but were not limited to: Dialysis Center at the Brooklyn Brookdale Campus, Well Life Network Halfway House in Elmont New York, the mini mall at 2600 Hylan Blvd in Staten Island, 138 Wiloughby Street in Brooklyn,  and 9701 Church Avenue, Brooklyn NY.

100.      PANTRY was employed as a security guard from August 2018 to December 2021.

14

101.     During PANTRY's employment with the Defendants, PANTRY's worked in excess of forty (40) hours per week.

102.     During PANTRY's employment with Defendants, PANTRY would also work in excess of ten hours per day.

103.     For the duration of PANTRY's employment he worked 5 days per week, Monday through Friday or 6 days per week, Monday through Saturday.

104.     PANTRY's schedule varied and he worked anywhere from 45 hours per week to 59 hours per week.

105.     PANTRY was not permitted to take a lunch break although he was entitled to a ½ hour lunch break.

106.     Upon his hire PANTRY was told that if he worked through lunch he would be permitted to leave early.

107.     Although he consistently worked through his lunch break PANTRY was not permitted to leave early.

108.     Despite not taking a lunch break, time for lunch was consistently deducted from PANTRY's paycheck.

109.     Defendants paid PANTRY by paycheck and personal check.

110.     From August 2018 to August 2019 PANTRY was paid either $13.00 or $15.00 per hour.

111.     From August 2019 until May 2021 PANTRY was paid $15.00 per hour.

112.     From May 2021 until December PANTRY was paid $17.00 per hour.

113.     PANTRY was paid once every two weeks on Thursdays.

114.     Defendants frequently neglected to pay PANTRY on time or at all.

115.     Defendants frequently paid PANTRY weeks late.

116.     PANTRY frequently had to ask Defendant ALEXANDER if he would be getting

paid for the week.

117.     PANTRY frequently had to follow up with Defendant ALEXANDER about

wages that Defendants owed to PANTRY.

118.     PANTRY frequently had to remind and request that Defendants pay PANTRY the

wages he was owed.

119.     On several occasions Defendants shorted PANTRY's paycheck, meaning

Defendants failed to pay PANTRY in full, for all he hours worked.

120.     Frequently PANTRY was forced to work without being paid.

121.     As a result of not being paid in full or at all, PANTRY complained to Defendants

about their unfair pay practices.

122.     Frequently Defendants ignored PANTRY's requests, reminders, and complaints.

123.     In or around Friday October 8, 2021, PANTRY complained to Defendant

ALEXANDER via text message and phone call that he and multiple other workers had

not been paid for any of the hours that they worked.

124.     In response to PANTRY's complaint Defendant ALEXANDER claimed that the

"post office screwed us big time" and  "it couldn't be helped."

125.     Defendant ALEXANDER stated, "I have a lot of people to explain this to."

126.     In or around October 11, 2021, because PANTRY had yet to be paid the wages

that was owed to him he told Defendant ALEXANDER that he would not show up to his

assigned job site.

127.     In response to PANTRY, Defendant ALEXANDER stated "Do what you want…

so we lose the job and everybody is out of work" insinuating that if PANTRY and others didn't show up they would be fired.

128.    Although PANTRY did not want to work without being paid, he was fearful that he would be terminated because of his complaints, so he resumed working without payment.

129.    On October 12, 2021, and October 14, 2021, PANTRY complained yet again to Defendant ALEXANDER about not being paid and inquired when he would be paid what he was owed.

130.    Defendant ALEXANDER began paying PANTRY by personal check rather than by a paycheck showing his hours and deductions.

131.    In November  2021, PANTRY complained to Defendant ALEXANDER about being paid by personal check rather than by a paycheck and that his hours were not correctly accounted for.

132.    In response to PANTRY's complaints, Defendant ALEXANDER would say "What do you want me to do pay the payroll guy and not pay you?"

133.    From November 2021 to December 2021, PANTRY was not paid for 4 weeks of work.

134.    On December 3, 2021, after not receiving a paycheck PANTRY texted Defendant ALEXANDER asking if he would be getting paid that day.

135.    In response, Defendant ALEXANDER replied, "I'm not sure but I'll let you know."

136.    PANTRY responded by telling Defendant ALEXANDER he would not be coming to work on Monday unless he was paid.

137.     In response, Defendant ALEXANDER assured PANTRY that he would be paid during the week.

138.     PANTRY relayed that he could no longer tolerate working without being paid and said he could not come back.

139.     In response, Defendant ALEXANDER said "After all these years a couple bad months where we are in a bad patch you give up on us. But that's ok. We will survive without you."

140.     On December 10, 2021, because PANTRY had yet to be paid the wages that were owed to him he texted Defendant ALEXANDER asking if and when he could pick up his check.

141.     Defendant ALEXANDER replied "No."

142.     Further, on December 10, 2021, via text message, PANTRY complained that the last check he received was short $100.00.

143.     Additionally, on December 10, 2021, PANTRY via his wife complained via email to Defendant ALEXANDER about his unfair pay practices.

144.     In response Defendant ALEXANDER stated "Your husband does not make enough money for me to cheat him. That's petty stealing… I'll go to my grace before I steal those small amounts of monies, I owe your husband. IF I HAD IT HE WOULD BE PAID."

145.     On December 17, 2021, because PANTRY had yet to be paid the wages that were owed to him, he texted Defendant ALEXANDER asking when he would be paid; PANTRY was ignored.

146.     On December 20, 2021, because PANTRY had yet to be paid the wages that were

owed to him, he texted Defendant ALEXANDER asking when he would be paid; PANTRY was ignored.

147.     On December 22, 2021, because PANTRY had yet to be paid the wages that were owed to him, he texted Defendant ALEXANDER asking when he would be paid.

148.     In response, Defendant ALEXANDER stated, "When we get the money you get paid!"

149.     The Defendants did not provide a wage notice to PANTRY upon his hire or annually.

150.     The Defendants did not provide PANTRY with a proper accurate wage statement with each payment he received.

151.     Although PANTRY worked over forty hours per week, Defendants failed to pay PANTRY at the required overtime premium rate.

152.     Although PANTRY worked daily shifts in excess of ten hours, Defendants failed to pay PANTRY spread-of-hours.

153.     Although the Plaintiffs, FLSA Collective Plaintiffs and Class members worked over forty hours per week, Defendants never paid them at the required overtime premium rate.

154.     Plaintiffs, FLSA Collective Plaintiffs, and Class members had workdays that exceeded 10 hours in length.  Defendants never paid them the spread of hours premium as required by the NYLL.

155.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) to the Plaintiffs, FLSA Collective Plaintiffs and

Class members.

156.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State spread of hours premium to the Plaintiffs, FLSA Collective Plaintiffs and Class members.

157.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to the Plaintiffs and Class members, in violation of the NYLL.

158.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to the Plaintiffs and Class members, at the beginning of employment and annually thereafter, in violation of the NYLL.

159.     The Plaintiffs retained Akin Law Group PLLC to represent the Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

**FIRST CAUSE OF ACTION**
**<u>FLSA – UNPAID MINIMUM WAGE</u>**

160.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

161.     By failing to pay the correct statutory minimum wage for all hours worked, Defendants have violated and continued to violate the FLS, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. §§206 and 215 (a)(2).

162.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

163.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiff to suffer loss wages and interest thereon.

164.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

165.     Defendants' violations of the FLSA described above have been willful, and therefore, a three year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

166.     As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NYLL – UNPAID MINIMUM WAGE

167.     Plaintiff repeats and realleges all foregoing paragraphs as if fully set forth herein.

168.     Defendants failed to pay Plaintiff the minimum wage to which he is entitled under the NYLL.

169.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff the minimum hourly wage.

170.     As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs and disbursements of this action pursuant to NYLL §§ 663(1),*et seq*.

## THIRD CAUSE OF ACTION
## FLSA – UNPAID OVERTIME

171.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and

reallege each and every allegation of the preceding paragraphs hereof with the same force

and effect as though fully set forth herein.

172.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the

regular rate of pay for work performed in excess of 40 hours per week, Defendants have

violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C.

§§ 207(a)(1) and 215(a)(2).

173.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA

within the meaning of 29 U.S.C. § 255(a).

174.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action

Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective

Action Members are entitled to recover from Defendants their unpaid overtime premium

compensation, damages for unreasonably delayed payment of wages, liquidated damages,

reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29

U.S.C. § 216(b).

**FOURTH CAUSE OF ACTION**
**NYLL – UNPAID OVERTIME**

175.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege

each and every allegation of the preceding paragraphs hereof with the same force and

effect as though fully set forth herein.

176.     Defendants willfully violated the Plaintiffs and the Class Members' rights by

failing to pay overtime compensation at a rate of not less than one and one-half times the

regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL

and regulations promulgated thereunder.

177.    Defendants' failure to pay overtime premium compensation caused the Plaintiffs

and the Class Members to suffer loss of wages and interest thereon.  The Plaintiffs and

the Class Members are entitled to recover from the Defendants their unpaid overtime

compensation, damages for unreasonably delayed payment of wages, liquidated damages,

reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL

§§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NYLL – UNPAID SPREAD-OF-HOURS

178.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege

each and every allegation of the preceding paragraphs hereof with the same force and

effect as though fully set forth herein.

179.    Defendants willfully violated the Plaintiffs and the Class Members' rights by

failing to pay compensation in an amount equal to one hour's pay at the relevant

minimum wage in all instances where the Class Members worked either a split shift or

more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations

promulgated thereunder including N.Y. Comp. Code R. & Regs. Tit. 12, §§ 137-1.7

(2010), 146-1.6 (2012).

180.    Defendants' failure to pay spread-of hours compensation caused the Plaintiffs and

the Class Members to suffer loss of wages and interest thereon.  The Plaintiffs and the

Class Members are entitled to recover from Defendants their unpaid spread-of-hours

compensation, damages for unreasonably delayed payment of wages, liquidated damages,

reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL

§§ 663(1) *et seq.*

## SIXTH CAUSE OF ACTION
## NYLL – FAILURE TO PROVIDE WAGE NOTICE

181.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

182.     Defendants have willfully failed to supply the Plaintiffs and Class Members with a wage notice as required by NYLL, Article 6, § 195(1), at the time of hiring or annually, containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission other; the regular pay day designated by the employer; the name of the employer; the physical address of the employer and the telephone number of the employer.

183.     Due to the Defendants' violations of the NYLL, the Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars for each workday that the violations occurred or continue to occur, up to a maximum of $5,000.00 per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NYLL – FAILURE TO PROVIDE WAGE STATEMENTS

184.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

185.     Defendants have willfully failed to provide the Plaintiffs and Class Members with

proper wage statements as required by NYLL Article 6 § 195 (3) with every payment of

wages, listing the following: the dates of work covered by that payment of wages; name

of employer; address and phone number of employer' rate or rates of pay and basis

thereof; whether paid by the hour, shift, day, week, salary or other; gross wages;

deductions; and net wages.

186.     Due to the Defendants' violations of the NYLL, the Plaintiffs and the Class

Members are entitled to recover from Defendants two hundred fifty dollars for each

workday that the violations occurred or continue to occur, up to a maximum of $5,000.00

per employee, as provided for by NYLL, Article 6 §§ 190 *et seq.*, liquidated damages as

provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-

judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

187.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege

each and every allegation of the preceding paragraphs hereof with the same force and

effect as though fully set forth herein.

188.     By failing to provide Plaintiff and Collective Action Members with accurate IRS

Forms W-2 for all of the tax years during which they were employed by Defendants, and

failing to properly record, account for, and report to the IRS all monies paid to Plaintiff

and the Class as compensation for all of the work performed during the course of

employment with the Defendants, and failing to properly report employee income and

withhold amounts listed on W-2 forms as monies withheld, Defendants filed fraudulent

information returns with the IRS, in violation of 26 U.S.C. §7434.

189.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent

information return with respect to payments purported to be made to any other person,

such person may bring a civil action for damages against the person so filing such

return." 26 U.S.C. § 7434(a).

## NINTH CAUSE OF ACTION
## NYLL-RETALIATION

190.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege

each and every allegation of the preceding paragraphs hereof with the same force and

effect as though fully set forth herein.

191.    Plaintiffs were employees of Defendants within the meaning of the NYLL.

192.    Defendants are employers within the meaning of the NYLL.

193.    NYLL § 215(1) states, in part, "No employer or his or her agent, or the officer of

agent of any corporation, partnership, or limited liability company…shall discharge,

threaten, penalize or in any other manner discriminate or retaliate against any employee

(i) because such employee has made a complaint to his or her employer…or his or her

authorized representative…that the employer has engaged in conduct that the employee,

reasonably and in good faith, believes violates any provision of this chapter…[or] (iii)

because such employee has caused to be instituted or is about to institute a proceeding

under or related to this chapter…or (v) because such employee has otherwise exercised

rights protected under this chapter…"

194.    While employed by the Defendants, Plaintiffs complained to the Defendants

about Defendants' unlawful practices, policies and procedures of not being paid proper

wages.

195.     Plaintiffs' complaints to Defendants constituted a protected activity under NYLL § 215.

196.     A causal connection exists between Plaintiffs' complaints of improper pay practices, and Defendants' decision to terminate their employment.

197.     Further, Defendants threatened Plaintiffs after Plaintiffs complained about Defendants for improper pay practices.

198.     Defendants violated NYLL § 215 by retaliating against Plaintiffs by threatening Plaintiffs and terminating their employment due to their complaints about Defendants' unlawful pay practices, policies and procedures.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.  Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.   An order tolling the statute of limitations;

d.   A declaratory judgment that the practices complained of herein are unlawful under applicable federal and state law;

e.   An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.   An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and supporting regulations;

g.   An award of compensatory damages as a result of Defendants' failure to pay overtime compensation and spread of hours pay pursuant to the NYLL and supporting regulations;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and spread of hours premium pursuant to the FLSA and NYLL;

i.   An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

j.   A maximum of $5,000 per Plaintiff to failure to provide a proper wage notice upon hire or annually;

k.   A maximum of $5,000 per Plaintiff for the failure to provide proper wage statements pursuant to the NYLL;

l.   Civil damages of $5,000 per Plaintiff for the fraudulent filing of information returns, pursuant to 26 U.S.C. §7434.

m.  An award of prejudgment and post-judgment interest;

n.  An award of costs and expenses of this action together with reasonable attorneys' and

   expert fees;

o.  Such other relief as this Court deems just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Rule 38(b) of the FRCP, Plaintiffs demand a trial by jury.

Dated: May 24, 2022
       New York, New York

Respectfully submitted,

**Akin Law Group PLLC**

*/s/ Kayla S. Callahan*
_____

Kayla S. Callahan
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
kayla@akinlaws.com

*Counsel for Plaintiffs, FLSA Collective
Plaintiffs and the Class*