UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

TREVOR COOMBS, MARK GITTENS, and SANJER PANTRY, *on behalf of themselves, FLSA Collective Plaintiffs and the Class*,

Plaintiffs,

v.

KA INVESTIGATIONS-SECURITY LLC, and KELVIN ALEXANDER,

Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
22-CV-3067 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiffs Trevor Coombs, Mark Gittens, and Sanjer Pantry commenced the above-captioned action[1] on May 24, 2022, against Defendants KA Investigations-Security LLC ("KA Investigations") and Kelvin Alexander. (Compl., Docket Entry No. 1.) Plaintiffs alleged that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law §§ 190 *et seq*., and 650 *et seq*. ("NYLL") by failing to pay minimum wage, unpaid overtime, a spread of hours premium, retaliation, filing fraudulent information returns and violating the Wage Theft Prevention Act. (*Id.*) Defendants' counsel withdrew from this action, (Order dated Dec. 19, 2023), and Defendants subsequently failed to appoint new

[1] Although Plaintiffs commenced this action as a collective action, Plaintiffs did not seek conditional certification in their default motion, and the Court therefore considers the collective action abandoned. *See Proano v. Melrose Home Improvement Corp*., No. 22-CV-6050, 2023 WL 8003303, at *9 (E.D.N.Y. Nov. 17, 2023) ("Because [p]laintiffs did not reiterate their collective action certification request in their [m]otion for [d]efault [j]udgment, the [c]ourt considers the collective action abandoned"); *Galicia v. 63-68 Diner Corp*., No. 13-CV-3689, 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Because [p]laintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the [c]ourt considers [p]laintiff's collective action request waived.").

counsel or litigate the action. On April 21, 2025, Plaintiffs moved for default judgement.[2] (Pls.' Mot. for Default J., Docket Entry No. 35.)[3] On February 5, 2026, Plaintiffs filed an amended complaint alleging that Defendants (1) violated the wage and overtime provisions of FLSA and the NYLL; (2) violated the unpaid spread of hours in violation of NYLL § 650, *et seq.*; (3) failed to provide wage notice and wage statements in violation of NYLL § 195 *et seq*.; and (4) retaliated against them in violation of NYLL § 215. (*See* Am. Compl., Docket Entry No. 42.) Plaintiffs also sought civil damages for the fraudulent filing of information returns in violation of 26 U.S.C. § 7434(a).[4] (*Id.*)

---

[2] Plaintiffs first filed a request for sum certain default judgment. (Request for Sum Certain Default Judgment, Docket Entry No. 34.) However, because the local rules do not permit attorneys' fees for a sum certain default judgment, Plaintiffs subsequently filed their request as a motion for default judgment. (*See* Order dated Apr. 14, 2025; Local Civil Rule 55.2 (b).)

[3] The Court referred the default motion to Magistrate Judge Lara K. Eshkenazi, (Order Referring Mot., dated Apr. 22, 2025), and on January 6, 2026, Judge Eshkenazi recommended that the Court deny the motion because Plaintiffs failed to allege enterprise coverage against KA Investigations and grant Plaintiffs leave to file an amended complaint. (Report and Recommendation (the "R&R"), Docket Entry No. 40.) The Court adopted the R&R. (Order Adopting R&R, dated Feb. 17, 2026.)

[4] Plaintiffs did not address the claims for retaliation and civil damages for the fraudulent filing of information returns in their motion for default judgment and the Court therefore deems them abandoned by Plaintiffs. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.4 (4th Cir. 2008) (noting that the plaintiff "included various state law claims in its complaint, but abandoned these [claims] when moving for default judgment"); *Arch Specialty Ins. Co. v. Canbert Inc*., No. 19-CV-5920, 2021 WL 1200329, at *3 n.3 (E.D.N.Y. Mar. 9, 2021) (recommending that a claim asserted in the complaint but "not discussed in the [m]otion" for default judgment be deemed abandoned), *report and recommendation adopted*, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021); *Vicedomini v. A.A. Luxury Limo Inc.*, No. 18-CV-7467, 2019 WL 12338298, at *9 (E.D.N.Y. Dec. 6, 2019) (recommending that the district judge not award prejudgment interest, attorneys' fees, or costs, because requests for such relief in the complaint were not renewed in the plaintiff's motion for default judgment), *report and recommendation adopted*, 2020 WL 9814086 (E.D.N.Y. Mar. 13, 2020); *Bd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v. Harbor Island Contracting, Inc*., No. 13-CV-6075, 2015 WL 1245963, at *2 n.1 (E.D.N.Y. Mar. 16, 2015) ("The [t]rustees do not pursue this relief in their motion for default judgment, and thus the [c]ourt deems this request abandoned.").

On May 15, 2026, the Clerk of Court entered default against KA Investigations. (Clerk's Entry of Default, Docket Entry No. 47.) On July 3, 2026, Plaintiff moved again for default judgment against Defendants.[5] For the reasons set forth below, the Court grants in part and denies in part Plaintiffs' motion for default judgment against KA Investigations.

## I. Background

### a. Factual background

Plaintiffs are former employees of KA Investigations who reside in Queens and Kings Counties: Coombs is a resident of Kings County, and Gittens and Pantry are residents of Queens County. (Am. Compl. ¶¶ 9, 12, 15.) KA Investigations "was and is a domestic limited liability company existing under the laws of the State of New York, with a service of process address located at 534 Van Duzer Street, Staten Island NY 10304."[6] (*Id.* ¶ 18.)

Plaintiffs allege first, that KA Investigations performed subcontracting work on several projects in Queens and Kings County, (*id.* ¶¶ 19–33), and "at all times relevant to this action, [KA Investigations] has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.00," (*id.* ¶ 34.) Second, Plaintiffs allege that "at all times relevant to this action," KA Investigations' "employees engaged in commerce or in the production of goods for commerce and handling or otherwise working on or with security and surveillance goods or materials that have been moved in [or] produced for commerce by any person." (*Id.* ¶ 35.) Third, Plaintiffs allege that

---

[5] (Pls.' Second Mot. for Default Judgment ("Pls.' Mot."), Docket Entry No. 48; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Mem."), appended to Pls.' Mem., Docket Entry No. 48-3.) Although Plaintiffs sought default judgment against both Defendants, because Alexander has filed for bankruptcy, *see infra* note 7, the Court only addresses the motion against KA Investigations.

[6] Plaintiffs allege that KA Investigations also has an office in Gastonia, North Carolina. (Am. Compl. ¶ 19.)

Alexander "was and is the owner of KA Investigations," and he exercised control over the terms and conditions of their employment. (*Id.* ¶¶ 38, 40.) Alexander also "had and exercised the power and authority to (i) fire and hire, (ii) determine the rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of [ ] Plaintiffs." (*Id.* ¶ 40.)

**i. Coombs' employment**

"From approximately December [of] 2019 to February 10, 2021," KA Investigations employed Coombs, a non-exempt employee, "on a full-time basis" as a flagger to work at various locations in Queens County. (Am. Compl. ¶¶ 44–47, 49.) Coombs "worked anywhere from 45 hours per week to 54.5 hours per week," and in excess of ten hours per day. (*Id.* ¶¶ 52–53.) Coombs was not permitted to take a lunch break, and although he "was told that if he worked through lunch he would be permitted to leave early," he was not allowed to do so. (*Id.* ¶¶ 54–56.) Even though Coombs did not take a lunch break, the time for lunch was consistently deducted from his paycheck. (*Id.* ¶ 57.) "From December [of] 2019 to February [of] 2021, KA Investigations paid Coombs $15.00 per hour" every two weeks by paycheck. (*Id.* ¶¶ 58–60.) KA Investigations failed to pay Coombs overtime for the hours that he worked in excess of 40 hours, and they also failed to pay Coombs spread-of-hours for the "daily shifts in excess of ten hours." (*Id.* ¶¶ 63–64.) In addition, KA Investigations did not provide Coombs with the annual wage notice nor with "a proper accurate wage statement with each payment he received." (*Id.* ¶¶ 61–62.)

**ii. Gittens' employment**

KA Investigations employed Gittens "from approximately June [of] 2018 to November 19, 2021" as a non-exempt employee and security guard at 137 Linden Boulevard, Brooklyn NY 11226 "on a full-time basis." (Am. Compl. ¶¶ 65–68.) Gittens worked for KA Investigations "anywhere from 45 hours per week to 57.5 hours per week" and in excess of ten hours per day.

(*Id.* ¶¶ 71–72.) Gittens was not permitted to take a lunch break, and although Gittens "was told that if he worked through lunch he would be permitted to leave early," he was not allowed to do so. (*Id.* ¶¶ 73–75.) Even though Gittens did not take a lunch break, the time for lunch was consistently deducted from his paycheck. (*Id.* ¶ 76.) "From June [of] 2018 to April [of] 2019, KA Investigations paid Gittens $14.00 per hour," and from "April [of] 2019 to November [of] 2021, KA Investigations paid Gittens $15.00 per hour." (*Id.* ¶¶ 78–79.) KA Investigations paid Gittens every two weeks by paycheck but frequently paid Gittens "weeks late," and Gittens "frequently had to follow up with [ ] Alexander about wages that [KA Investigations] owed to [him]." (*Id.* ¶¶ 80–84.) On several occasions, KA Investigations failed to pay Gittens in full for all the hours he worked. (*Id.* ¶ 86.) KA Investigations also failed to pay Gittens overtime for the hours he worked in excess of 40 hours a week, (*id.* ¶ 93), spread-of-hours for the "daily shifts in excess of ten hours," (*id.* ¶ 94), and did not provide Gittens with the annual wage notice nor with "a proper accurate wage statement with each payment he received," (*id.* ¶¶ 91–92).

**iii. Pantry's employment**

KA Investigations employed Pantry, a non-exempt employee, as a security guard at various locations throughout New York City. (Am. Compl. ¶¶ 95–99.) "From approximately August [of] 2018, to December 3, 2021," KA Investigations employed Pantry "on a full-time basis." (*Id.* ¶ 94.) Pantry "worked anywhere from 45 hours per week to 59 hours per week," Monday through Friday or Saturday, and in excess of ten hours per day. (*Id.* ¶¶ 101–03.) Pantry was not permitted to take a lunch break and although Pantry "was told that if he worked through lunch he would be permitted to leave early," he was not allowed to do so. (*Id.* ¶¶ 104–106.) Even though Pantry did not take a lunch break, the time for lunch was consistently deducted from his paycheck. (*Id.* ¶ 107.) From August of 2018 to August of 2019, KA Investigations paid Pantry either $13.00 or $15.00 per hour, (*id.* ¶ 109); from August of 2019 until May of

2021, KA Investigations paid Pantry $15.00 per hour, (*id.* ¶ 110); and from May of 2021 until December of 2021, KA Investigations paid Pantry $17.00 per hour, (*id.* ¶ 111). KA Investigations often paid Pantry "weeks late," Pantry "frequently had to follow up with [ ] Alexander about wages that KA Investigations owed to [him]," and KA Investigations, on several occasions, failed to pay Pantry in full for all the hours he worked. (*Id.* ¶¶ 114, 116, 118.) From November of 2021 to December of 2021, KA Investigations did not pay Pantry for four weeks of work. (*Id.* ¶ 132.) KA Investigations also failed to pay Pantry overtime for the hours he worked in excess of 40 hours per week, (*id.* ¶ 152), failed to pay Pantry spread-of-hours for the days he worked in excess of ten hours, (*id.* ¶ 153), and did not provide Pantry with the annual wage notice, nor with wage statements, (*id*. ¶¶ 148–49).

**b. Procedural background**

On October 27, 2022, Defendants filed an answer to the Complaint. (Answer, Docket Entry No. 8.) On the same day, Alexander filed a letter notifying the Court that he had commenced Chapter 7 Bankruptcy proceedings and "as a matter of law, an automatic stay of litigation exists."[7] (Ltr. dated Oct. 27, 2022, Docket Entry No. 9.) Following several status

[7] As of August 21, 2026, Alexander's bankruptcy proceeding appears to be ongoing. *See In re* Kelvin Alexander, No. 22-42362 (Bankr. E.D.N.Y.). "Section 362 of the Bankruptcy Code provides that a bankruptcy petition 'operates as a stay, applicable to all entities,' of the commencement or continuation of judicial proceedings against the debtor." *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (quoting 11 U.S.C. § 362(a)(1)); *see also In re Trib. Co. Fraudulent Conv. Litig*., 946 F.3d 66, 76 (2d Cir. 2019) (internal quotations omitted) ("When a bankruptcy action is filed, any action or proceeding against the debtor is automatically stayed by Section 362(a). The purpose of the stay is to protect creditors as well as the debtor."); *In re Esowe*, No. 24-1172, 2025 WL 3671071, at *1 (Bankr. S.D.N.Y. Dec. 17, 2025) ("Section 362(a)(1) of the Bankruptcy Code imposes an automatic stay of 'the commencement or continuation' of all litigation against a debtor upon the debtor's filing of a bankruptcy petition.") (internal quotation omitted).

conferences and reports with Magistrate Judge Cheryl L. Pollak,[8] Plaintiffs indicated that they sought to proceed against KA Investigations while Alexander's bankruptcy proceedings remained pending. (Status Report dated May 18, 2023, Docket Entry No. 14.) At a June 12, 2023 status conference, Judge Pollak directed Plaintiffs to proceed with discovery against KA Investigations. (Min. Entry dated June 12, 2023.) On September 11, 2023, KA Investigations submitted a letter application asking the Court to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(v) for failure to timely serve interrogatories and document demands. (Ltr. dated Sep. 11, 2023, Docket Entry No. 18.) In the letter, KA Investigations noted that its "funding cut off in December 2021," all employees were laid off, operations ceased, and the company had "no funds to pay counsel fees or litigation expenses [because] [t]he company ha[d] no revenue." (*Id.*) Judge Pollak denied the application for dismissal and ordered the exchange of discovery. (Order dated Sep. 12, 2023.) KA Investigations' counsel subsequently moved to withdraw from the action and Judge Pollak granted the motion. (Mot. to Withdraw, Docket Entry No. 22; Order granting Mot. to Withdraw, Docket Entry No. 25.) Following counsel's withdrawal, KA Investigations failed to obtain new counsel or appear in the action and on May 16, 2024, the Clerk of Court entered default against KA Investigations. (Clerk's Entry of Default, Docket Entry No. 31.)

On April 21, 2025, Plaintiffs filed a motion for default judgment, and the Court referred the motion to Judge Eshkenazi. (Order dated Apr. 22, 2025.) On January 6, 2026, Judge Eshkenazi recommended that the Court deny Plaintiffs' motion for default judgment because Plaintiffs failed to allege enterprise coverage against KA Investigations. Plaintiffs did not

---

[8] On June 29, 2024, this case was reassigned from Magistrate Judge Pollak to Magistrate Judge Eshkenazi. (*See* Order dated June 29, 2024.)

"allege that KA Investigations purchased or handled out-of-state supplies or that Plaintiffs or other employees used materials that moved in interstate commerce." (R&R 10.) Judge Eshkenazi also recommended that the Court grant Plaintiffs leave to amend their complaint,[9] (*id.* at 1), which Plaintiffs did on February 5, 2026. On May 15, 2026, the Clerk of Court entered default against KA Investigations. (Clerk's Entry of Default.) On July 3, 2026, Plaintiffs filed their second motion for default judgment. (Pls.' Mot.)

## II. Discussion

### a. Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see Am. Transit Ins. Co. v. Pierre*, No. 24-CV-360, 2025 WL 863865, at *2 (E.D.N.Y. Mar. 19, 2025) (explaining that there is a "two-step process for the entry of judgment against a party who fails to defend" (quoting *Mickalis Pawn Shop*, 645 F.3d at 128)). "[T]he court may, on [the] plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam) (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966, 2025 WL 1042416, at *1 (S.D.N.Y. Apr. 8, 2025) (quoting *id.*); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that a district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as

[9] On February 17, 2026, the Court adopted the R&R. (Order Adopting R&R.)

true and draw all reasonable inferences in its favor" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))); *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-CV-6634, 2025 WL 3265230, at *3 (E.D.N.Y. Nov. 24, 2025) ("When evaluating a plaintiff's application for a default judgment, 'a court is required to accept all [ ] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor.'" (alterations in original) (quoting *Romanowicz*, 577 F.3d at 84)). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *see Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040, 2025 WL 2731755, at *3 (E.D.N.Y. Sep. 25, 2025) (applying the Rule 55 standard and holding that default establishes liability only where the complaint's well-pleaded allegations state a valid cause of action), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Oct. 10, 2025). However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party," *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)). *See Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025) ("In the Second Circuit, there is a strong 'preference for resolving disputes on the merits.'" (first quoting *Enron Oil Corp.*, 10 F.3d at 95; and then citing *Johnson v. N.Y. Univ.*, 800 F. App'x 18 (2d Cir. 2020))).

"The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Romanowicz*, 577 F.3d at 83 n.6). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Wellsville Manor LLC v. Great Am. Ins. Co.,* No. 22-CV-1229, 2025 WL 2173642, at *3 (E.D.N.Y. July 31, 2025) (quoting *Cement & Concrete*, 699 F.3d at 234); *Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v. T.J.V. Mech. LLC*, No. 24-CV-6281, 2025 WL 825308, at *7 (W.D.N.Y. Mar. 17, 2025) (quoting same); *Godinger Silver Art Ltd. v. Amazon Storefront HODSOF US*, No. 23-CV-7087, 2024 WL 4145724, at *2 (E.D.N.Y. Sep. 11, 2024) (quoting same).

**b. Default judgment**

**i. Statute of limitations**

Under the FLSA, claims for non-willful violations must be filed within two years and willful violations must be filed within three years. 29 U.S.C. § 255(a); *see also Perry v. City of New York*, 78 F.4th 502, 521 (2d Cir. 2023) (explaining that a jury's finding that the defendants willfully violated the FLSA extended the statute of limitations from two to three years); *Byer v. Periodontal Health Specialists of Rochester, PLLC*, No. 20-1751, 2021 WL 3276725, at *1 (2d Cir. Aug. 2, 2021) (summary order) ("The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" (quoting *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 70 (2d Cir. 2014))). To establish willfulness for

purposes of the FLSA statute of limitations, a plaintiff must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Perry*, 78 F.4th at 520 (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)); *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 324 (2d Cir. 2021) ("[I]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995))); *Xu v. Ho*, 111 F. Supp. 3d 274, 280 (E.D.N.Y. 2015) (finding willfulness where the defendants did "not dispute that (1) they did not post FLSA and NYLL notices, (2) they made cash payments, and (3) they did not provide overtime pay"); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *4–5 (E.D.N.Y. June 18, 2013) (finding willfulness as a matter of law based on the "[d]efendants' method of compensating nearly all of the [p]laintiffs in cash and their arbitrary issuance of W-2s [to only some employees]").

The NYLL has a six-year statute of limitations. NYLL § 198(3) ("[A]n action to recover upon a liability imposed by this article must be commenced within six years."); *Tene*, 2025 WL 2731755, at *4 ("[T]he NYLL establishes a six-year limitations period for wage claims." (citing NYLL §§ 198(3), 633(3))); *Camillo v. Khim's Millennium Mkt., Inc.*, No. 22-CV-7846, 2025 WL 951265, at *4 (E.D.N.Y. Mar. 13, 2025) ("Under the NYLL, the statute of limitations is six years." (citing same)), *report and recommendation adopted*, 2025 WL 948125 (E.D.N.Y. Mar. 28, 2025); *Newman v. ASA Coll., Inc.*, 754 F. Supp. 3d 521, 538 (S.D.N.Y. 2024) ("The statute of limitations is six years for claims under the NYLL . . . ."); *Galindo v. Yummy Foods Deli Corp.*, No. 21-CV-45, 2024 WL 947283, at *6 (S.D.N.Y. Jan. 17, 2024) ("Under the NYLL, the statute of limitations is six years." (citing NYLL § 198(3))), *report and recommendation adopted*, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914, 2023 WL 6338666, at *5 (E.D.N.Y. Sep. 29, 2023) ("[T]he NYLL establishes a six-year

limitations period for wage claims." (citing NYLL §§ 198(3), 633(3))), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Nov. 30, 2023); *Campos Marin v. J&B 693 Corp.*, No. 19-CV-569, 2022 WL 377974, at *5 (S.D.N.Y. Jan. 21, 2022) ("Claims brought pursuant to the NYLL are subject to a six-year statute of limitations." (citing *Byer*, 2021 WL 3276725, at *2)), *report and recommendation adopted*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022); *Leon Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *4 n.5 (E.D.N.Y. Nov. 29, 2021) ("The statute of limitations under the NYLL is six years and does not require a showing of willfulness." (citing NYLL § 663(3))), *aff'd*, No. 22-227, 2023 WL 2395995 (2d Cir. Mar. 8, 2023) (summary order).

Plaintiffs allege that KA Investigations paid them below the minimum wage, failed to provide overtime pay, failed to pay a spread of hours premium, and failed to provide the statutorily required wage notice and wage statements. (Am. Compl. ¶¶ 5, 166–169, 174–187.) Based on these allegations, Plaintiffs have sufficiently alleged that KA Investigations willfully violated the FLSA and the NYLL. *See Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *7 (S.D.N.Y. Mar. 9, 2020) (concluding that allegations that the defendant "failed to post information as required by the FLSA and the NYLL, paid [the plaintiff] in cash, did not have a time-recording system, and did not otherwise require him to record his hours" demonstrated "deliberate conduct in disregard of an employer's obligations"); *Medina v. E. Commc'n Inc.*, No. 16-CV-869, 2018 WL 2899658, at *3 (S.D.N.Y. June 11, 2018) (concluding that the defendants' "violations of the law were willful" where they "were aware of the basic overtime rules," "failed to pay [the p]laintiff at the lawful overtime rate," failed "to provide adequate wage notices and wage statements," and failed "to provide any documentation []such as paystubs[]"); *cf. Alberto v. Rico Pollo #2 Rest. Corp.*, No. 18-CV-4762, 2018 WL 6813057, at *4 (E.D.N.Y. Dec. 26, 2018) ("[I]f the payments in fixed amounts of cash on a weekly basis without

credit for overtime are in fact reflective of a policy and practice of defendants, it is hard to imagine a lack of willfulness."). Because the Court finds that KA Investigations' violations are willful, the three-year statute of limitations applies to Plaintiff's FLSA claims and the six-year statute of limitations applies to Plaintiff's NYLL claims. Accordingly, Plaintiff's claims are timely with respect to any FLSA violations that occurred on or after May 24, 2019, and any NYLL violations that occurred on or after May 24, 2016, *i.e.*, three years and six years, respectively, prior to the filing of the Complaint on May 24, 2022.

**ii. Eligible employer**

"The FLSA contains two primary worker protections: first, it guarantees covered employees a federal minimum wage; and second, it provides covered employees the right to overtime pay at a rate of one-and-a-half their regular rate for hours worked above forty hours a week." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019). To qualify as a covered employee, an employee must be either (1) "engaged in [interstate] commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in [interstate] commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a)(1); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 86 n.2 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)); *Kennedy v. Imperial Sec. & Consultants LLC*, No. 23-CV-2790, 2024 WL 3387261, at *3 (E.D.N.Y. May 1, 2024) ("The FLSA applies only to employees (1) who are personally engaged in interstate commerce or in the production of goods for interstate commerce or (2) who are employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." (internal citation and quotation marks omitted)); *Marcus v. Lominy*, No. 18-CV-1857, 2022 WL 493688, at *14 (S.D.N.Y. Feb. 17, 2022) ("FLSA coverage applies 'only to employees who are (1) personally engaged in interstate commerce or in the production of goods for interstate commerce (so called

individual coverage), or (2) employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (so-called enterprise coverage).'" (quoting *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011))). The FLSA defines "[e]nterprise engaged in commerce or in the production of goods for commerce," as a business that (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an annual gross revenue of at least $500,000. 29 U.S.C. §§ 203(s)(1)(A)(i)–(ii); *see Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 205 (E.D.N.Y. 2021) (defining the conditions for enterprise coverage). As for the annual sales requirement, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Soto v. Miss Laser Inc.*, No. 19-CV-4745, 2023 WL 319547, at *4 (E.D.N.Y. Jan. 19, 2023) (quoting *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-3597, 2021 WL 3888067, at *6 (E.D.N.Y. July 7, 2021), *report and recommendation adopted*, 2021 WL 3884193 (E.D.N.Y. Aug. 31, 2021)); *see also Quito v. Zheng*, 710 F. App'x 28, 29 (2d Cir. 2018) (noting that "annual sales exceeding $500,000 [ ] is required for relief under the FLSA"). "Under the FLSA, [the p]laintiffs must establish that they or their employer was engaged in interstate commerce." *Maldonado v. Aangan of India LLC*, No. 20-CV-9598, 2024 WL 3910812, at *11 (S.D.N.Y. July 22, 2024) (citing *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015)), *report and recommendation adopted*, 2024 WL 3887130 (S.D.N.Y. Aug. 20, 2024).

Plaintiffs allege that "[a]t all times relevant to this action, KA Investigations has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.00." (Am. Compl. ¶ 34.) In addition, Plaintiffs allege that "at all times relevant to this action" KA investigations had "employees engaged in

commerce or in the production of goods for commerce and handling or otherwise working on or with security and surveillance goods or materials that have been moved in [or] produced for commerce by any person." (*Id.* ¶ 35.) These allegations are sufficient to establish that KA Investigations qualifies as an enterprise engaged in interstate commerce.[10] *Gumaneh v. Vilano Emp. Servs., Inc.*, No. 22-CV-774, 2023 WL 5715613, at *4 (S.D.N.Y. Sep. 5, 2023) (finding that the plaintiffs "satisfied th[e] minimal burden by alleging that [the d]efendants 'had revenues and/or transacted business in an amount exceeding $500,000' and conducted business in interstate commerce" (citation omitted)); *Pintor v. Park King at JFK, LLC*, No. 16-CV-6269, 2018 WL 2074157, at *3 (E.D.N.Y. Feb. 21, 2018) (finding the plaintiff's allegations that the defendants "have had 'employees engaged in commerce,' handling, selling or otherwise working on goods that have been moved in or produced by commerce, and that the volume of business exceeded $500,000" sufficient to establish the defendants' employer status). Accordingly, the Court finds that Plaintiff sufficiently alleges FLSA enterprise coverage and KA Investigations is a covered employer.

**iii. Liability**

**1. Minimum wage claims**

Both the FLSA and the NYLL contain provisions prohibiting employers from paying their employees a rate lower than a certain minimum hourly wage. 29 U.S.C. § 206(b); N.Y.

[10] Because the Court finds that KA Investigations qualifies as an "employer" under the FLSA and "the NYLL's definition of 'employer' is coextensive with the FLSA's definition," KA Investigations also qualifies as Plaintiffs' employer under the NYLL. *See Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502, 2025 WL 832730, at *7 (E.D.N.Y Mar. 18, 2025) (quoting *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180, 2022 WL 1018791, at *7 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022)), *report and recommendation adopted*, Order Adopting Report and Recommendation (Mar. 31, 2025)).

Comp. Codes R. & Regs. tit. 12, § 141-1.3. The minimum wage under the FLSA is $7.25 an hour. 29 U.S.C. § 206(a)(1)(C); *see, e.g.*, *Paschalidis v. Airline Rest. Corp.*, No. 20-CV-2804, 2021 WL 5013734, at *4 (E.D.N.Y. Oct. 28, 2021) (applying the $7.25 federal minimum wage to the plaintiff's employment during early 2020). Under the NYLL, in 2018, the minimum wage in Kings and Queens County was $13.00 for large employers and $12.00 per hour for small employers. *See* NYLL §§ 652(1)(a)(i)–(ii). In 2019, the minimum wage in Kings and Queens County was $15.00 per hour for large employers and $13.50 per hour for small employers. [11] *Id.*; *see Ramirez v. Sake II Japanese Rest., Inc.*, No. 20-CV-9907, 2023 WL 3354881, at *6 (S.D.N.Y. Apr. 24, 2023) ("As of January 1, 2018, large employers in New York City were required to pay employees $13 per hour and small employers were required to pay $12 per hour. [ ] [O]n January 1, 2019, the New York City minimum wage rose to $15 per hour . . . for large

---

[11] Plaintiffs do not allege whether KA Investigations is a large or small employer, but the Court applies the large employer rate for its analysis because Plaintiffs allege that KA Investigations earned gross annual sales of over $500,000. *See Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *5 n.11 (E.D.N.Y. Mar. 30, 2022) (explaining that "courts have reached inconsistent results when determining which rate to apply where plaintiffs do not allege the number of employees the defaulting defendant employed. Some give [the p]laintiffs the 'benefit of the doubt,' and apply the large employer rate" and applying the large employer rate where the plaintiffs failed to allege whether the defendant was a small or large employer but alleged that the defendant had at least $500,000 in annual sales); *Juan v. Son of Polisi*, No. 19-CV-4662, 2021 WL 2179344, at *8 n.4 (E.D.N.Y. Jan. 24, 2021) (applying the minimum wage rate for a large employer based on alleged annual sales of $500,000), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Mar. 31, 2021); *Castiblanco v. Don Alex Peru*, No. 20-CV-2235, 2021 WL 4755701, at *5 n.2 (E.D.N.Y. Aug. 20, 2021) (same), *report and recommendation adopted*, 2021 WL 4205195 (E.D.N.Y. Sep. 16, 2021). Some courts have refused to apply the large employer rate where the complaint is silent as to the defendant's status as a small or large employer and the court's opinion does not discuss whether the defendant earned sales of at least $500,000. *See e.g.*, *Anzurez v. La Unica Caridad Inc.*, No. 20-CV-3828, 2021 WL 2909521, at *4 (S.D.N.Y. July 12, 2021) (applying the small-employer rate where the complaint did not allege that the defendant qualified as a large employer, and the court did not find that the defendant had at least $500,000 in annual sales), *report and recommendation adopted*, 2021 WL 3173734 (S.D.N.Y. July 27, 2021); *Reyes v. Cafe Cousina Rest. Inc.*, No. 18-CV-1873, 2019 WL 5722475, at *9 (S.D.N.Y. Aug. 27, 2019) (same), *report and recommendation adopted*, 2019 WL 5722109 (S.D.N.Y. Oct. 7, 2019).

employers, and to $13.50 per hour for small employers."), *report and recommendation adopted*, 2023 WL 3346768 (S.D.N.Y. May 10, 2023). In 2020 and 2021, the minimum wage in Kings and Queens County was $15.00 an hour for every employer regardless of size. *See Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 326 (S.D.N.Y. 2021) ("The applicable minimum wage rates [ ] are . . . $15.00 per hour for 2019 and 2020.") *report and recommendation adopted*, 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022).

"Where a plaintiff brings claims under both the FLSA and the NYLL, he 'may not receive a double recovery of back wages' or liquidated damages under both statutes." *Rodriguez v. New Generation Hardware Store Corp.*, No. 22-CV-4422, 2023 WL 1516908, at *2 (S.D.N.Y. Feb. 3, 2023) (quoting *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016)); *see also Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *11 (E.D.N.Y. Dec. 9, 2019) ("When [p]laintiffs bring both FLSA and NYLL minimum wage claims simultaneously, [ ] double recovery is prohibited."), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Mar. 31, 2020); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (collecting cases), *aff'd*, 752 F. App'x 33 (2d Cir. 2018). "If 'a plaintiff is entitled to damages under both federal and state wage law, the [c]ourt has discretion to award . . . damages under the statute providing the greatest amount of relief.'" *Gamero*, 272 F. Supp. 3d at 498 (quoting *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135, 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016)).

### A. Coombs

Coombs worked for KA Investigations from December of 2019 until February 10, 2021, (Am. Compl. ¶ 1; Aff. of Trevor Coombs ("Coombs Aff.") ¶¶ 2, 10, appended to Pls.' Mot.,

Docket Entry No. 48-4; Damages Sheet), and KA Investigations paid him $15.00 per hour.[12] As discussed *supra* Section II.b.iii.1, the statutory minimum wage in New York City in 2019 was $13.50 for small employers and $15.00 for large employers; $15.00 per hour for 2020 and 2021 regardless of employer size. At all relevant times, KA Investigations paid Coombs at or above the applicable minimum wage. Coombs therefore has failed to establish liability on his minimum wage claim. *See Rosa v. La Oficina of Queens, Inc.*, No. 18-CV-6915, 2023 WL 2745214, at *9 (E.D.N.Y. Mar. 17, 2023) ("Because Plaintiff was not paid less than [the applicable minimum wage] during the statutory period, he has failed to establish [d]efendants' liability for failure to pay minimum wages under the FLSA"), *report and recommendation adopte*d, 2023 WL 2736237 (E.D.N.Y. Mar. 31, 2023).

**B. Gittens**

Gittens worked for KA Investigations from June of 2018 to November 19, 2021. (Am. Compl. ¶ 2.) KA Investigations paid Gittens $14.00 per hour from June of 2018 to December of 2018 and $15.00 per hour through the rest of his employment. (Damages Sheet.) As discussed *supra* Section II.b.iii.1, the statutory minimum wage in New York City was: $13.00 per hour for

[12] The Court relies on Plaintiffs' Damages Sheet to make its damages calculations because the Amended Complaint is inconsistent and not specific as to start dates. *See New York State Teamsters Conf. Pension & Ret. Fund v. Yank Waste* Co., Inc., No. 5:25-CV-419, 2026 WL 2198740, at *2 (N.D.N.Y. July 30, 2026) ("'[A] court may rely upon affidavits and documentary evidence' to evaluate the sum of damages in a default judgment, as it does in this case." (quoting *Overcash v. United Abstract Grp, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008)); *Yagui v. Republic Bar & Lounge Inc.*, No. 25-CV-2674, 2026 WL 1296762 *20 n.12 (E.D.N.Y. May 12, 2026) (adopting the exact employment dates provided in plaintiff's damages chart where the complaint and declaration did not provide exact dates); *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *2 (E.D.N.Y. Mar. 21, 2023) (relying on factual allegations in plaintiffs' affirmations over allegations in second amended complaint); *Mercedes v. Tito Transmission Corp.*, No. 15-CV-1170, 2019 WL 102007, at *10 (S.D.N.Y. Jan. 4, 2019) (relying upon the chart annexed to the plaintiff's attorney's declaration reflecting the plaintiff's proposed damages calculation).

large employers and $12.00 per hour for small employers in 2018; $13.50 for small employers and $15.00 for large employers in 2019; $15.00 per hour for all employers regardless of size from 2020 through 2021. At all relevant times, KA Investigations paid Gittens at or above the applicable minimum wage. Gittens therefore has failed to establish liability on his minimum wage claim. *See Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No. 22-CV-2256, 2024 WL 3760583, at *12 (E.D.N.Y. July 18, 2024), *report and recommendation adopted*, 2024 WL 3759660 (E.D.N.Y. Aug. 12, 2024), *vacated in part*, 2026 WL 207960 (E.D.N.Y. Jan. 27, 2026); *Nepomuceno v. Columbia Deli & Grill Inc.*, No. 19-CV-3150, 2024 WL 1363532, at *3 (S.D.N.Y. Mar. 28, 2024).

**C. Pantry**

Pantry worked for KA Investigations from August of 2019 to December 3, 2021. (Am. Compl. ¶ 3.) KA Investigations paid Pantry $14.00 per hour from June 29, 2018, to December 21, 2018; $15.00 per hour from December 28, 2018, to August 6, 2021; and $17.00 per hour from August 6, 2021, to December 10, 2021. (Damages Sheet.) As discussed *supra* Section II.b.iii.1, the statutory minimum wage in New York City was: $13.00 per hour for large employers and $12.00 per hour for small employers in 2018; $13.50 for small employers and $15.00 for large employers in 2019; $15.00 per hour for all employers regardless of size from 2020 through 2021. At all relevant times, KA Investigations paid Pantry at or above the applicable minimum wage. Pantry therefore has failed to establish liability on his minimum wage claim. *See Rodriguez*, 2024 WL 3760583, at *12; *Nepomuceno*, 2024 WL 1363532, at *3.

Accordingly, Plaintiffs have failed to establish KA Investigations' liability on their minimum wage claims.

**2. Overtime claims**

Both the FLSA and the NYLL provide that employees must be "compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty [hours] per week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see also Agramonte v. Pineridge Commc'ns, Inc.*, No. 23-CV-9029, 2024 WL 5399233, at *6 (E.D.N.Y. Dec. 20, 2024) (quoting *Nakahata*, 723 F.3d at 200), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Jan. 8, 2025). Both statutes provide that the regular rate is either the actual rate at which the employee is paid or the statutory minimum wage, whichever is higher. *See* 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA); *see also Silva v. Legend Upper W. LLC*, No. 16-CV-3552, 2021 WL 4197360, at *10 (S.D.N.Y. Sep. 14, 2021) (calculating the plaintiffs' overtime rate of pay under the FLSA and the NYLL at one and one-half times the minimum wage). Under the NYLL, a "regular rate" is either the employee's hourly pay or, if the employee is paid on "any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16; *see, e.g.*, *Pastuizaca v. Mihwa Jo Corp.*, No. 22-CV-5561, 2025 WL 437929, at *6 (E.D.N.Y. Feb. 8, 2025) (computing a non-hourly worker's regular rate by dividing weekly earnings by hours worked), *on reconsideration in part*, 2025 WL 2371048 (E.D.N.Y. Aug. 14, 2025). "Plaintiffs cannot recover unpaid overtime compensation under both statutes for any period of statutory overlap." *Payamps*, 2019 WL 8381264, at *12; *see Gamero*, 272 F. Supp. 3d at 498 (collecting cases); *see also Brathwaite v. Martini Collections Inc.*, No. 22-CV-4929, 2025 WL 99108, at *3 (S.D.N.Y. Jan. 14, 2025) (recognizing as settled that

plaintiffs may recover under either FLSA or NYLL, but not both, for the same period), *report and recommendation adopted*, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025). Because the overtime wage rate is higher and the statute of limitations longer under the NYLL, the Court assesses Plaintiffs' overtime claims under the NYLL. *See Gamero*, 272 F. Supp. 3d at 498 ("If a plaintiff is entitled to damages under both federal and state wage law, the [c]ourt has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." (second alteration in original) (internal quotation marks omitted) (quoting *Hengjin Sun*, 2016 WL 1587242, at *2)).

**A. Coombs**

The NYLL overtime provision applies to Coombs' employment from the period of December 6, 2019[13] to February 10, 2021, (Damages Sheet), when he "worked anywhere from 45 hours per week to 54.5 hours per week." (Am. Compl. ¶¶ 1, 44; Coombs Aff. ¶ 9.) Coombs' hourly rate was $15.00 per hour. (Am. Compl. ¶ 58.) Plaintiffs' Damages Sheet states that Coombs worked 14.5 overtime hours for every week throughout his employment. (Damages Sheet.) This yields an overtime premium of $22.50 per hour: ($15.00 per hour x 1.5). Coombs worked 14.5 overtime hours for 61 weeks and 6 days during the relevant time period. This results in unpaid overtime wages of $20,180.89: [($22.50 x 14.5 hours) x 61 weeks and 6 days = $20,180.89]. KA Investigations therefore owes Coombs $20,180.89 in unpaid overtime wages.

[13] The Damages Sheet shows that December 6, 2019, was Coombs' first pay date. (Damages Sheet.)

### B. Gittens

The NYLL overtime provision applies to Gittens' employment. First, Gittens worked overtime from the period of June 1, 2018[14] to November 19, 2021, when Gittens alleges he "worked anywhere from 45 hours per week to 57.5 hours per week." (Am. Compl. ¶ 2; Gittens Aff. ¶ 9.) The Damages Sheet provides that KA Investigations paid Gittens $14.00 per hour from June of 2018 through December of 2018 and $15.00 from January of 2019 through the remainder of his employment. (Damages Sheet.) In 2018, Gittens work yielded an overtime premium of $21.00 per hour: ($14.00 per hour x 1.5). During this time period of June 1, 2018 through December 31, 2018, Gittens worked 17.5 overtime hours for 30 weeks and 4 days. This results in unpaid overtime wages of $11,235: [($21.00 x 17.5) x 30 weeks and 4 days = $11,235].

Second, Gittens worked overtime from January 1, 2019 through December 10, 2021, and KA Investigations paid Gittens $15.00 per hour. (Damages Sheet.) This yields an overtime premium of $22.50 per hour: ($15.00 per hour x 1.5). During this time period, Gittens worked 17.5 overtime hours for 153 weeks and 4 days. (Damages Sheet.) This results in unpaid overtime wages of $60,468.75: [($22.50 x 17.5) x 153 weeks and 4 days = $60,468.75]. KA Investigations therefore owes Gittens $71,703.75 in total unpaid overtime wages: [$11,235 + $60,468.75 = $71,703.75].

### C. Pantry

The NYLL overtime provision applies to Pantry's employment. First, Pantry worked overtime from July 27, 2018[15] to December 3, 2021, when Pantry alleges he "worked anywhere from 45 hours per week to 59 hours per week." (Am. Compl. ¶ 3; Pantry Aff. ¶ 8.) The

---

[14] The Damages Sheet shows June 1, 2018 was Gittens' first pay date. (Damages Sheet.)

[15] The Damages Sheet shows July 27, 2018 was Pantry's first pay date. (Damages Sheet.)

Damages Sheet provides that from the beginning of his employment through December 27, 2018, KA Investigations paid Pantry $14.00 per hour. (Damages Sheet.) This yields an overtime premium of $21.00 per hour: ($14.00 per hour x 1.5). During this time period, Pantry worked 19 overtime hours for 22 weeks, resulting in unpaid overtime of $8,778: [($21.00 x 19) x 22 weeks = $8,778].

Second, Pantry worked overtime from December 28, 2018 through August 12, 2021, KA Investigations paid Pantry $15.00 per hour. (Damages Sheet). This yields an overtime premium of $22.50 per hour: ($15.00 per hour x 1.5). During this time period, Pantry worked 19 overtime hours for 136 weeks and 1 day, resulting in unpaid overtime of $58,201.07: [($22.50 x 19) x 136 weeks and 1 day = $58,201.07].

Third, Pantry worked overtime from August 13, 2021, to December 3, 2021, KA Investigations paid Pantry $17.00 per hour. (Damages Sheet.) This yields an overtime premium of $25.50 per hour: ($17.00 per hour x 1.5). During this time period, Pantry worked 19 overtime hours for 16 weeks and 1 day resulting in unpaid overtime of $7,821.21: [($25.50 x 19) x 16 weeks and 1 day = $7,821.21]. KA Investigations therefore owes Pantry $74,800.28 in total unpaid overtime wages: $8,778 + $58,201.07 + $7,821.21= $74,800.28.

Accordingly, KA Investigations owes Coombs $20,180.89 in unpaid overtime wages; Gittens $71,703.75 in unpaid overtime wages; and Pantry $74,800.28 in unpaid overtime wages, for a total of $166,684.90 in unpaid overtime.

**3. Spread of hours**

New York law provides that "[o]n each day on which the spread of hours exceeds [ten hours], an employee shall receive one additional hour of pay at the basic minimum hourly rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6; *Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018) ("New York also awards 'spread of hours pay' in addition to minimum and overtime

wages, in which an employee who works more than ten hours in one day must be paid an additional hour at the state minimum wage amount." (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4)). "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday," and includes "working time plus time off for meals plus intervals off duty." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6; *Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 654 (2d Cir. 2021) ("The spread of hours is defined as 'the interval between the beginning and end of an employee's work day,' including 'working time plus time off for meals plus intervals off duty.'" (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.18)); *see also Gu v. Lemonleaf Thai Rest. Mineola Corp.*, No. 18-CV-6614, 2024 WL 3813379, at *3 (E.D.N.Y. June 13, 2024) ("The spread of hours pay has been determined to only apply 'to those employees making minimum wage and not to those making more than minimum wage.'" (quoting *Xu*, 111 F. Supp. 3d at 281)), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. June 28, 2024); *Perez v. E.P.E. Enter. Corp.*, No. 22-CV-6353, 2024 WL 1632255, at *11 (E.D.N.Y. Apr. 15, 2024) ("In addition, under the NYLL, employees are entitled to an additional hour of pay at the minimum wage rate for each day an employee works at least ten hours."), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. June 10, 2024); *Rodriguez v. Ridge Rest., Inc.*, No. 16-CV-254, 2020 WL 7711859, at *5 (E.D.N.Y. Dec. 29, 2020) ("[U]nder New York law, when the spread of hours, i.e. the period of time worked in a given day, exceeds 10 hours, an employee must be paid one hour's pay at the basic minimum hourly wage rate, in addition to his otherwise-required wages. This spread of hours pay includes working time plus time off for meals plus intervals off duty." (internal citations and quotation marks omitted)).

Plaintiffs are entitled to spread of hours pay for each day when they worked for the minimum wage and in excess of ten hours a day. Plaintiffs allege that they worked in excess of

ten hours per day throughout their employment. (*See* Am. Compl. ¶¶ 52, 94, 151.) The Court therefore awards Plaintiffs one "additional hour of pay at the basic minimum hourly rate" for each day that they worked over ten hours. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6; *Rana*, 887 F.3d at 122 n.3 ("New York [ ] awards 'spread of hours pay' . . . in which an employee who works more than ten hours in one day must be paid an additional hour at the state minimum wage amount." (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4)).

**A. Coombs**

Plaintiffs allege that throughout his employment, Coombs worked in excess of ten hours per day. (Am. Compl. ¶ 1.) From December 6, 2019 to February 10, 2021, KA Investigations paid Coombs $15.00 per hour. (Damages Sheet.) The minimum wage was $13.50 per hour for small employers and $15.00 per hour for large employers in 2019; $15.00 per hour for all employers regardless of size in 2020 and 2021, *see supra* Section II.b.iii.1. Because KA Investigations paid Coombs the minimum wage and Coombs alleges that he worked "in excess of ten hours day" throughout his employment, (Am. Compl. ¶ 52), Coombs is entitled to $4,639.28 for the period of 61 weeks and 6 days: [$15.00 per hour x 5 days per week x 61 weeks and 6 days = $ 4,639.28]. Accordingly, KA Investigations owes Coombs $4,639.28 in spread of hours pay.

**B. Gittens**

Plaintiffs allege that throughout Gittens' employment, Gittens worked "in excess of ten hours per day." (Am. Compl. ¶ 71.) From June 1, 2018 to December 31, 2018, the minimum wage was $13.00 for large employers and $12.00 per hour for small employers, *see supra* Section II.iii.1. During this time period, KA Investigations paid Plaintiff $14.00 per hour, (Damages Sheet), which is above the minimum wage, and KA Investigations therefore does not owe Gittens spread of hours for this period. *See Ge Chun Wen v. Hair Party 24 Hours Inc.*, No.

15-CV-10186, 2021 WL 3375615, at *10 (S.D.N.Y. May 17, 2021) (concluding that the "[p]laintiff is not entitled to, and should not be awarded any . . . spread-of-hours damages" because the "[p]laintiff's base rate of pay . . . exceed the minimum wage rate at all relevant times"), *report and recommendation adopted*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021).

The minimum wage was $13.50 per hour for small employers and $15.00 per hour for large employers in 2019; $15.00 per hour for all employers regardless of size in 2020 and 2021, *see supra* Section II.b.iii.1. During this time of January 1, 2019 through December 10, 2021, KA Investigations paid Gittens the minimum wage of $15.00 per hour. (Damages Sheet.) Gittens is therefore entitled to $11,517.85 for this period of 153 weeks and 4 days: [$15.00 per hour x 5 days per week x 153 weeks and 4 days = $11,517.85]. KA Investigations therefore owes Gittens $11,517.85 in spread of hours pay.

**C. Pantry**

Plaintiffs allege that throughout Pantry's employment, he worked "in excess of ten hours per day." (Am. Compl. ¶ 101.) From July 27, 2018 to December 31, 2018, the minimum wage was $13.00 for large employers and $12.00 per hour for small employers, *see supra* Section II.b.iii.1. During this time period, KA Investigations paid Pantry $14.00 per hour. (Damages Sheet.) This pay is above the minimum wage and KA Investigations is not liable for spread of hours for this time period. *See Ge Chun*, 2021 WL 3375615, at *10. For the same reason, KA Investigations is not liable for spreads of hours pay for Pantry's pay period of work beginning on August 13, 2021 through the end of his employment in December of 2021. During this period, KA Investigations paid Pantry $17.00 per hour which was above the statutory minimum wage of $15.00. Accordingly, Pantry made above the minimum wage and is not entitled to spread of hours for these periods.

In 2019, the minimum wage was $13.50 per hour for small employers and $15.00 per hour for large employers and in 2020 and 2021, the minimum wage was $15.00 per hour for all employers regardless of size in 2020 and 2021, *see supra* Section II.iii.1. From the pay period of January 1, 2019, through the pay period of August 12, 2021, KA Investigations paid Gittens $15.00 per hour. (Damages Sheet.) For this time period, KA Investigations owes Pantry $10,232 in spread of hour pay [$15.00 per hour x 5 days per week x 136 weeks and 3 days = $10,232].

KA Investigations therefore owes Coombs $4,639.28 in his spread of hours pay; Gittens $11,517.55 for his spread of hours pay; and Pantry $10,232 in spread of hours pay, for a total of $26,389.13 in spread of hours pay.

**4. Wage Theft Prevention Act claims**

"As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569–70 (E.D.N.Y. 2015) (quoting *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5039428 (S.D.N.Y. Sep. 30, 2014)). This notice must include, among other things, (1) "the rate or rates of pay and basis thereof"; (2) "whether paid by the hour, shift, day, week, salary, piece, commission, or other"; (3) "the regular pay day designated by the employer"; (4) "the name of the employer"; (5) "any 'doing business as' names used by the employer"; and (6) "such other information as the commissioner deems material and necessary." NYLL § 195(1)(a); *see Rodriguez*, 2024 WL 3760583, at *13; *see also Mendez*, 564 F. Supp. 3d at 219 (describing the required contents of the wage notice under Section 195(1)).

"Under Section 195(3), employers must give their employees accurate wage statements that include the dates and hours worked, the rate of pay and additional details." *Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 660 (E.D.N.Y. 2020); *Sanango v. Ruby Nails Tarrytown, Inc.*, No. 20-CV-8245, 2023 WL 2707329, at *4 (S.D.N.Y. Mar. 30, 2023) (stating that NYLL § 195(3) "requires that employers provide employees with certain wage statement information 'with every payment of wages'" (quoting NYLL § 195(3))). An employee who is not given these statements may "recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1)(ii). "Pursuant to a 2015 amendment to the law, statutory damages for failure to provide initial hire notices [under NYLL § 195(1)] are $50 per day up to a maximum recovery of $5,000.00 per employee." *Ramos v. CJ Contractor Servs., Inc.*, No. 23-CV-274, 2024 WL 3954330, at *5 (S.D.N.Y. Aug. 2, 2024), *report and recommendation adopted*, 2024 WL 3952643 (S.D.N.Y. Aug. 27, 2024); *see Salamanca v. ABC Corp.*, No. 19-CV-1335, 2021 WL 3275902, at *7 (E.D.N.Y. July 15, 2021) ("After February 27, 2015, violations of [NYLL §] 195(1) carry damages of $50 per workday, up to a maximum of $5,000."), *report and recommendation adopted*, 2021 WL 3269089 (E.D.N.Y. July 30, 2021).

The Second Circuit has clarified that a plaintiff seeking statutory damages for Wage Theft Prevention Act notice/statement violations in federal court must allege a concrete injury causally linked to the missing or inaccurate notices. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) ("[A] plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."); *id* at 305–06 (explaining that Article III requires a concrete injury even for statutory violations); *id.* at 311 (stating that "[w]ithout plausible allegations" of such injury, there is no standing); *see also Harty v. W. Point Realty, Inc.*, 28 F.4th

435, 443–44 (2d Cir. 2022) (holding that a bare statutory violation is insufficient for standing and that a plaintiff must allege a concrete, particularized injury beyond the asserted regulatory noncompliance); *Brathwaite*, 2025 WL 99108, at *7 (applying *Guthrie* and dismissing § 195 claims where the "complaint does not allege a concrete downstream consequence of the failure to receive payroll notices or wage statements," and explaining that "confusion and uncertainty about" compensation are "hypothetical, speculative concerns . . . insufficient to establish standing in a suit for damages" (internal citations and quotation marks omitted)).

Federal courts in this Circuit have further underscored that, because "in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation," a plaintiff asserting a Wage Theft Prevention Act claim must show a real injury beyond the employer's noncompliance. *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 67 (2d Cir. 2023) (alteration in original) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If [a] plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 282–83 (2d Cir. 2023) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)).

Plaintiffs allege that KA Investigations "willfully failed to supply the Plaintiffs with a wage notice as required by NYLL, Article 6, § 195(1), at the time of hiring or annually." (Am. Compl. ¶¶ 1–3, 181.) Plaintiffs also allege that the absence of required notices and statements caused each Plaintiff to "suffer monetary and economic harm." (*Id.* ¶¶ 182, 186.) However,

these allegations are conclusory and do not address the downstream effects of KA Investigations' noncompliance with the Wage Theft Prevention Act. *See Guthrie*, 113 F.4th at 311 ("Without plausible allegations that he suffered a concrete injury because of [his employer's] failure to provide the required notices and statements, [the plaintiff] lacks standing to sue for that statutory violation."); *see also Nguyen v. Pho Vietnam 87 Corp.*, No. 23-CV-4298, 2025 WL 564546, at *11 (S.D.N.Y. Jan. 31, 2025), (holding that the plaintiff lacked standing for the Wage Theft Prevention Act claim where the plaintiff did not allege that "he would have taken any action or done anything differently had he received the required notice" or that "if he would have received the notices, he would have understood that he was being underpaid and would have sought to receive his overtime wages or the minimum wage"), *report and recommendation adopted*, 2025 WL 562763 (S.D.N.Y. Feb. 19, 2025); *McLaughlin v. Onanafe Mgmt. Sols. LLC*, No. 22-CV-6792, 2024 WL 4184485, at *11 (E.D.N.Y. Sep. 14, 2024) (finding that the plaintiff failed to establish the requirements for Article III standing where the allegations in the complaint failed to establish that plaintiff "suffered a concrete injury because of [the defendant's] failure to provide the required notices and statements"), *report and recommendation adopted*, 2024 WL 4355485 (E.D.N.Y. Sep. 30, 2024).

Accordingly, Plaintiffs' have failed to allege violations of the Wage Theft Prevention Act.

**iv. Damages**

**1. Actual damages**

As set forth above, Plaintiffs are entitled to $166,684.90 in unpaid overtime wages and $26,389.13 in spread of hours pay. However, Plaintiffs request $152,372.50 in unpaid wages and $7,810 in spread of hours pay. (Decl. of Kayla S. ("Callahan Decl.") ¶¶ 25–26, appended to Pls.' Mot., Docket Entry No. 48-1; Pls.' Mem. 6.) Plaintiffs request $22,675.50 for Coombs,

$59,321 for Gittens and $70,376 for Pantry. (Callahan Decl. ¶ 25; Pls.' Mem. 6.) The Court will award only the amount requested by Plaintiffs. *See Pena v. Metro. Wireless Anandpur Inc.*, 21-CV-2239, 2021 WL 5054368, at *3 n.1 (S.D.N.Y. Nov. 1, 2021) (awarding amount requested by the plaintiff even though "[the p]laintiff's request of $1,380.91 appears to underestimate the amount of overtime[] wages due"); *Trs. of the Sheet Metal Workers' Int'l Ass'n Loc. Union No. 28 Benefit Funds v. Maximum Metal Mfrs, Inc.*, No. 14-CV-2890, 2015 WL 8031380, at *3 (S.D.N.Y. Dec. 7, 2015) (awarding the plaintiff's requested amount); *Leggett & Platt, Inc. v. CM Mattress, LLC*, No. 14-CV-3277, 2015 WL 7281635, at *2 (stating that "[w]here default has been noted, plaintiff's recovery is limited to the amount requested in its [m]otion for [d]efault [j]udgment" (citing Fed. R. Civ. P. 54(c))).

The Court awards Coombs $24,160.5, consisting of $22,675 in unpaid wage claims and $1,485 in spread of hours pay; Gittens $62,079. consisting of $59,321 in unpaid wage claims and $2,758 in spread of hours pay; and Pantry $73,943 consisting of $70,376 in unpaid wage claims and $3,567 in spread of hours pay.

**2. Liquidated damages**

The FLSA provides for the payment of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260. *See also Bi v. Xia*, No. 18-CV-23, 2024 WL 306693, at *3 (D. Conn. Jan. 3, 2024) ("Under the FLSA, successful plaintiffs may collect 'the payment of wages lost and an additional equal amount as liquidated damages.'" (quoting 29 U.S.C. § 216(b))), *aff'd*, No. 24-234, 2025 WL 1733682 (2d Cir. June 23, 2025) (summary order); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) ("The FLSA provides for 'the payment of

wages lost and an additional equal amount as liquidated damages' . . . ." (quoting same)). The employer bears the burden of proving good faith. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997), *holding modified by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003); *Ruiz v. JHDHA, Inc.*, No. 23-CV-7896, 2024 WL 5077665, at *3 (S.D.N.Y. Dec. 11, 2024) ("The employer bears the burden of proving good faith and reasonableness to avoid an award of liquidated damages."); *Gortat*, 949 F. Supp. 2d at 380 ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." (quoting *Herman*, 172 F.3d at 142)). "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman*, 172 F.3d at 142; *see also Rodriguez*, 784 F. Supp. 2d at 125 (awarding liquidated damages where defendants "voluntarily underpaid plaintiffs" and failed to appear). "Similarly, under the NYLL, an employee is entitled to 'liquidated damages equal to one hundred percent of the total amount of wages found to be due,' 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" *Hernandez*, 2016 WL 3248493, at *34 (quoting NYLL § 198(1-a)). "[C]ourts have not substantively distinguished the federal standard [under the FLSA] from the current state standard [under the NYLL] of good faith." *Stefanovic v. Old Heidelberg Corp.*, 18-CV-2093, 2022 WL 3928370, at *5 (S.D.N.Y. Aug. 31, 2022) (second and third alterations in original) (quoting *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015)).

The Court awards Plaintiffs liquidated damages equal to "one hundred percent of the total of [ ] underpayments found to be due" NYLL § 663(1); *see also Paulino v. S & P Mini Mkt. Corp.*, 791 F. Supp. 3d 457, 468 (S.D.N.Y. 2025) ("The NYLL allows employees to recover 'an additional amount as liquidated damages equal to one hundred percent of the total

amount of the wages found to be due' unless the employer 'proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" (quoting NYLL § 198(1-a))); *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 254–55 (S.D.N.Y. 2025) (similar); *Soto v. Crismeli Deli Grocery, Inc.*, No. 19-CV-10053, 2024 WL 3730115, at *8 (S.D.N.Y. June 28, 2024) ("The amount of liquidated damages is equal to 100% of the amount owed to the [p]laintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours." (quoting *Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report and recommendation adopted*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021))), *report and recommendation adopted*, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024)). Accordingly, the Court awards Plaintiffs $160,182.50 in liquidated damages equal to the amount Plaintiffs requested for unpaid wages and spread of hours owed to Plaintiffs.

The Court awards Coombs $24,160.5, consisting of $22,675 in unpaid wage claims and $1,485 in spread of hours pay; Gittens $62,079. consisting of $59,321 in unpaid wage claims and $2,758 in spread of hours pay; and Pantry $73,943 consisting of $70,376 in unpaid wage claims and $3,567 in spread of hours pay.

**3. Prejudgment interest**

Section 198(1) of the NYLL allows an employee who prevails in an action on a wage claim to recover "prejudgment interest as required under the civil practice law and rules." *See Rana*, 887 F.3d at 123 (2d Cir. 2018) (providing that the NYLL liquidated damages provision permits employees to recover "prejudgment interest as required under the civil practice law and rules" (quoting NYLL § 198)). The applicable interest rate is 9% per annum. *See Ramirez v. Lin*, 830 F. App'x 672, 673–74 (2d Cir. 2020) (affirming the district court's application of a 9% interest rate to prejudgment interest under the NYLL (citing *Ramirez v. Roka Japanese Food*, No. 18-CV-296, 2019 WL 2372866, at *10 (E.D.N.Y. June 5, 2019))); *Jones v. Pawar Bros.*

*Corp.*, No. 17-CV-3018, 2023 WL 6214213, at * 4 (E.D.N.Y. Sep. 25, 2023) ("The NYLL provides for an award of pre-judgment interest in addition to liquidated damages, calculated at 9% per year."); *Tarax v. Blossom W. Inc.*, No. 19-CV-6228, 2022 WL 2132749, at *4 (S.D.N.Y. June 14, 2022) ("Pursuant to New York state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." (citation omitted)). "Interest shall be computed from the earliest ascertainable date the cause of action existed," or "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *see Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 24, 2020) (citing N.Y. C.P.L.R. §§ 5001(b), 5004).

KA Investigations failed to pay Plaintiffs earned wages throughout their employment, therefore the Court calculates prejudgment interest from a reasonable intermediate date for each Plaintiff. *See Feuer*, 2020 WL 401787, at *12 n.22 (calculating prejudgment interest on unpaid wages from a date halfway between the first and last days of the employee's employment); *Dai*, 490 F. Supp. 3d at 662 (calculating prejudgment interest on unpaid wages from the midpoint of the first and last date of underpayment); *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (determining prejudgment interest as the "midway point between when [the] plaintiff[s] began and ceased working for defendant[s]" (second and third alterations in original) (internal citation and quotation marks omitted)).

KA Investigations employed Coombs from December of 2019 through February 10, 2021 (Am. Compl. ¶ 1.) The Court calculates interest from July 13, 2020, the date halfway between December 15, 2019 and February 10, 2021. Coombs is therefore entitled to prejudgment interest

on his overtime and spread of hours damages of $24,160.5[16] from July 13, 2020 until the date judgment is entered, at a rate of $5.95 per day ($24,160.5 x 0.09 / 365 days). *See Ying Ying Dai*, 490 F. Supp. 3d at 662.

KA Investigations employed Gittens from June of 2018 through November 19, 2021 (Am. Compl. ¶ 2.) The Court calculates interest from March 2, 2020, the date halfway between June 15, 2018 and November 19, 2021. Gittens is entitled to prejudgment interest on his overtime and spread of hours damages of $62,079 from March 2, 2020 until the date judgment is entered, at a rate of $15.30 per day ($62,079 x 0.09 / 365 days). *See Ying Ying Dai*, 490 F. Supp. 3d at 662.

KA Investigations employed Pantry from August of 2018 through December 3, 2021 (Am. Compl. ¶ 3.) The Court calculates interest from April 9, 2020, the date halfway between August 15, 2018 and December 3, 2021. Pantry is entitled to prejudgment interest on his overtime and spread of hours damages of $73,943 from April 9, 2020 until the date judgment is entered, at a rate of $18.23 per day ($73,943 x 0.09 / 365 days). *See Dai*, 490 F. Supp. 3d at 662.

Coombs is entitled to prejudgment interest on his overtime and spread of hours damages of $24,160.50 from July 13, 2020 until the date judgment is entered, at a rate of $5.95 per day; Gittens is entitled to prejudgment interest on his overtime and spread of hours damages of $62,079 from March 2, 2020 until the date judgment is entered, at a rate of $15.30 per day; and Pantry is entitled to prejudgment interest on his overtime and spread of hours damages of $73,943 from April 9, 2020 until the date judgment is entered, at a rate of $18.23 per day.

---

[16] As discussed *supra* Section II.b.iv.1, the Court will award only the amount requested by Plaintiffs and uses the amount owed provided by Plaintiffs for this calculation.

**4. Attorneys' fees and costs**

Plaintiffs seek an award of $50,850 in attorneys' fees which reflects 169.5 hours of attorney work on this case by Kayla Callahan of the law firm Akin & Salaman PLLC. (Billing Summary Chart, appended to Pls.' Mot., Docket Entry No. 48-15.) Plaintiffs also request $725 in costs for filing and service fees. (*Id.*) Plaintiffs submitted billing records and itemized chart of disbursements reflecting their work. (*Id.*)

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); NYLL §§ 198(1), (1-a); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citations omitted). Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105–06 (2d Cir. 2022) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp*., 537 F.3d 132, 151 (2d Cir. 2008)); *see Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) (summary order) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 358 (2d Cir. 2021) (quoting same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))). In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."

*Lilly*, 934 F.3d at 232 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see Ortiz*, 843 F. App'x at 359 (quoting *Lilly*, 934 F.3d at 230). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Fisher*, 948 F.3d at 606–07 ("'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" (quoting same)). "Courts look to '[b]oth the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint.'" *Holick*, 48 F.4th at 109 (alteration in original) (quoting *Barfield*, 537 F.3d at 152). Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *id.* at 187–89 (clarifying that district courts should consider, among others, the factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)); *see Lilly*, 934 F.3d at 229–30 (explaining the *Arbor Hill* factors).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first quoting *Arbor Hill*, 522 F.3d at 183; and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–53 (2010)); *see SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*,

Nos. 23-7313, 23-7321, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (summary order) (quoting *Millea*, 658 F. 3d at 166); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d at 183–84)); *Grant v. Lockett*, Nos. 19-469, 19-738, 19-1558, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021) (summary order) ("Courts calculate a presumptively reasonable fee under § 1988 by 'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)). The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")); *see also Godinger Silver Art Ltd.*, 2024 WL 4145724, at *6 (holding that a prevailing plaintiff must provide detailed billing records specifying hours worked, rates charged, and related costs before the court can assess reasonableness of requested fees, and directing submission of supplemental documentation).

**A. Reasonable hourly rate**

Plaintiffs seek attorneys' fees calculated using hourly rates of $300 an hour for attorney Callahan. (Pls.' Mem. 11; Billing Summary Chart.) In support, Plaintiffs contend that Callahan is "an attorney in good standing with the New York and New Jersey States Bar," she was admitted in 2021, and she "has worked extensively in the field of employment litigation (including wage and hour), in both state and federal courts." (Pls.' Mem. 10–11.) Plaintiffs

argue that the rate of $300 per hour is "in line with the prevailing market rates today for an attorney of similar experience practicing within the Eastern District of New York." (*Id.* at 11.)

"[T]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Lilly*, 934 F.3d at 231 (second and third alterations in original) (quoting *Arbor Hill*, 522 F.3d at 190); *see Agudath*, 2023 WL 2637344, at *2 (quoting same). Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) (summary order) ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))). Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59). "[T]he 'community' . . . is the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (discussing forum rule (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172, 175–76 (2d Cir. 2009))); *Chaparro*, 2021 WL 5121140, at *1–2 (affirming

district court decision on reasonableness of hourly rate in accordance with forum rule). The prevailing rates for experienced attorneys in the Eastern District of New York cases range from approximately $100 to $450, depending on experience level. *See Konits v. Karahalis*, 409 F. App'x 418, 422–23 (2d Cir. 2011) (noting rates for attorneys in cases in the Eastern District of New York ranged from $300–$400 (citing *Konits v. Valley Stream Cent. High Sch. Dist.*, No. 01-CV-6763, 2010 WL 2076949, at *2 (E.D.N.Y. May 19, 2010))); *Vazquez Romero v. La Morenita Fruit Mkt. Corp.*, No. 23-CV-6300, 2026 WL 687228, at *15 (E.D.N.Y. Mar. 11, 2026) ("Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." (quoting *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 299 (E.D.N.Y. 2024)), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Mar. 31, 2026); *Shuford v. Cardoza*, No. 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("Courts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates." (citing *Crews v. Cnty. of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))). Although some courts in this District "have recognized slightly higher ranges . . . of $300–$450 per hour for partners," *Harris v. Best Companion Homecare Servs., Inc.*, No. 18-CV-5328, 2019 WL 4738821, at *8 (E.D.N.Y. Aug. 26, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 4737056 (E.D.N.Y. Sep. 27, 2019), the cases in which the upper limit of this range has been awarded have involved "attorneys with 20 or more years of experience," *Small v. N.Y.C. Transit Auth.*, No. 03-CV-2139, 2014 WL 1236619, at *7 (E.D.N.Y. Mar. 25, 2014) (collecting cases). *See, e.g.*, *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 583 (2d Cir. 2019) (noting that district courts have "conclud[ed] that approximately $300 to $450 was a reasonable hourly rate for partners within

the Eastern District of New York" (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015))); *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266, 2025 WL 405986, at *6–7 (E.D.N.Y. Feb. 5, 2025) (applying the forum rule and finding a $450 partner rate reasonable given counsel's experience and prevailing Eastern District market rates); *Santander Consumer USA, Inc. v. Port Auth. of N.Y. & N.J.*, No. 20-CV-1997, 2023 WL 5758995, at *3 (E.D.N.Y. Sep. 6, 2023) ("[T]here is also precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (alteration in original) (citing *Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 4376618 (E.D.N.Y. Sep. 22, 2022))). In the Eastern District of New York, "senior associates are typically awarded $200 to $325 per hour." *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281, 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022); *Shuford*, 2024 WL 865989, at *3. As for paralegals, courts "have recently awarded hourly rates ranging from . . . $70 to $100 for legal support staff in FLSA cases." *Park v. Khims Mkt. Inc.*, No. 24-CV-7437, 2025 WL 3461156, at *18 (E.D.N.Y. Aug. 19, 2025) (alteration in original) (quoting *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848, 2022 WL 4646866, at *13 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sep. 30, 2022)), *supplemented*, 2025 WL 3460949 (E.D.N.Y. Aug. 27, 2025); *Sanchez Flores v. El Bukanitas Inc.*, No. 22-CV-6751, 2024 WL 1051161, at *14 (E.D.N.Y. Feb. 14, 2024) (citing same), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Mar. 19, 2024); *Ladino v. Cordova*, 21-CV-2449, 2024 WL 968898, at *6 (E.D.N.Y. Feb. 14, 2024) (citing same), *report and recommendation adopted*, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024).

"[T]he fee applicant [has the burden] to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Melo v. Milagro Grocery Corp.*, 750 F. Supp. 3d 38, 61 (E.D.N.Y. 2024) (second alteration in original) (quoting *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014)); *see also Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209–211 (2d Cir. 2005) (explaining that district courts must ground their rate determinations in the evidentiary record rather than relying on assumptions based on the proof submitted). When the evidentiary submission does not substantiate the level of experience necessary to support the proposed rates, courts reduce the requested compensation. *See Howarth v. FORM BIB LLC*, No. 18-CV-7047, 2020 WL 3441030, at *5 (S.D.N.Y. May 11, 2020) ("Where a moving party 'fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.'" (quoting *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 362 (S.D.N.Y. 2010))), *report and recommendation adopted*, 2020 WL 3436685 (S.D.N.Y. June 22, 2020); *Streamlight, Inc. v. Gindi*, No. 18-CV-987, 2019 WL 6733022, at *19 (E.D.N.Y. Oct. 1, 2019) ("[W]hen a party fails to provide information to support the hourly rate of an associate, courts may reduce the hourly rate to the lowest associate rate in the range."), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 300–01 (E.D.N.Y. 2012) (finding the submitted declaration, which only "provide[d] some background on his experience in civil rights litigation," stated he had worked "on unspecified matters," and detailed experience at two firms which did not "have a practice in civil rights or housing discrimination litigation," did not

demonstrate relevant litigation experience or a background consistent with the senior-level rate sought but that "much closer to a junior associate than the senior partner whose hourly rate he hope[d] to claim," and thus reduced the requested rate to that of a junior associate). Courts have also determined that information such as an attorney's admission date or title does not alone establish entitlement to the higher end of senior-level market rates. *See UFCW Loc. One Health Care Fund v. Greene Great Am., Inc.*, No. 23-CV-1441, 2025 WL 1506163, at *6 n.5 (N.D.N.Y. May 27, 2025) ("Given [the attorney's] [twenty-eight] years as an attorney, she may be entitled to a greater rate of compensation, but as the record contains no information regarding fields of expertise, reputation, or professional experience, the [c]ourt awards the high end of the associate rate."); *Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2022 WL 16755146, at *3 (E.D.N.Y. Sep. 15, 2022) ("[I]n the context of attorney's fees awards, one's title is not the dispositive inquiry; rather, it is one's experience, *i.e.*, skill and expertise, that weighs in favor of awarding a requested hourly rate." (quoting *Lopez v. Ki Moon Rest. Corp.*, No. 17-CV-6078, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021))), *report and recommendation adopted*, 2022 WL 4596735 (E.D.N.Y. Sep. 30, 2022); *Tjartjalis v. Pro. Claims Bureau, Inc.*, No. 14-CV-1412, 2016 WL 4223493, at *2 (E.D.N.Y. Aug. 9, 2016) ("Although [the attorney was] presumably [ ] a partner at the new firm, that title does not, in and of itself, confer him with a higher level of experience warranting a higher hourly rate."). "The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Melo*, 750 F. Supp. 3d at 61 (quoting *Brown*, 2014 WL 1237448, at *5); *id.* (finding that although counsel had "been admitted to practice since 1992 and is counsel at the firm," "no other information [was] provided about him," and "[t]he affidavit [did] not provide information as to [the attorney's] experience," the court found "the requested rate excessive" and instead awarded $325 per hour as "appropriate" and "at the high end for senior associates").

The Court finds the attorney's rate unreasonable. Callahan is an attorney in good standing who has "worked extensively in the field of employment litigation (including wage and hour), in both state and federal courts" since 2021. (Pls.' Mem. 11.) Plaintiffs state that $300 per hour is the applicable hourly rate for an attorney of Callahan's experience. (*Id.*) In support, Plaintiffs cite to *Martinez v. New 168 Supermarket LLC*, 2020 WL 5260579, at *8 (E.D.N.Y. 2020), for the proposition that "[c]ourts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for *partners*." (*Id.* (emphasis added).)

A $300 per hour rate is consistent with rates for senior attorneys. *See Jiang v. D&S Wedding Planner Inc.*, No. 22-CV-643, 2023 WL 6307813, at *12 (E.D.N.Y. Sep. 28, 2023) (stating that "some courts in this District 'have recognized slightly higher ranges . . . of $300–$450 per hour for partners'" and "the cases in which the upper limit of this range has been awarded have involved 'attorneys with [twenty] or more years of experience'" (alterations in original) (first quoting *Harris*, 2019 WL 4738821, at *8, and then quoting *Small*, 2014 WL 1236619, at *6–7)); *see also Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707, 2024 WL 4271234, at *17 (E.D.N.Y. Sep. 19, 2024) (awarding $325 to a senior associate in practice since 2016), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Dec. 5, 2024); *Laboy v. Quality Auto. Servs., Inc.*, No. 21-CV-2501, 2024 WL 472983, at *3 (E.D.N.Y Feb. 7, 2024) (awarding $350 for a senior associate who had ten years of practice and succeeded in a complex matter).

Callahan was admitted to practice in 2021, (Pls.' Mem. 10), and therefore, has been an attorney for five years. Callahan has less experience than the attorneys whom courts in this district award $300 per hour in similar cases. In addition, the case Plaintiffs cite in support of their request, *Martinez v. New 168 Supermarket LLC*, 2020 WL 5260579, at *8 (E.D.N.Y. 2020), is distinguishable. (*See* Pls.' Mem. 11.) In *Martinez*, the court found that "[c]ourts in the

Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners." $300 per hour is too high for an attorney of Callahan's experience.

The Court finds that $275 per hour is reasonable as appropriate compensation because it is between the rates Courts in this district award junior and senior associates in FLSA cases. This rate reflects that Callahan has five years of experience and she was the principle attorney on this case who communicated and coordinated with the clients, the court, and filed the relevant motions. (Billing Summary Chart.) It also reflects that this is a non-complex FLSA case in which Defendants have defaulted on the action. *See Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502, 2025 WL 832730, at *14 (E.D.N.Y. Mar. 18, 2025) ("In FLSA cases in the Eastern District of New York, reasonable hourly rates range from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff." (quoting *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868, 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023))), *report and recommendation adopted*, Amended Order Adopting Report and Recommendation (E.D.N.Y. Apr. 9, 2025); *Martinez*, 2020 WL 5260579, at *8 (finding hourly rates ranging from $300 to $450 for partners in FLSA cases to be reasonable and collecting cases).

**B. Hours reasonably expended**

In reviewing a fee application, courts may review the expenditure of hours submitted by counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sep. 9, 2024) ("In determining whether the number of hours worked is reasonable, a district court should examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." (alteration in original) (internal quotation marks

omitted) (quoting *Chaparro*, 2021 WL 5121140, at *2)); *see Agudath*, 2023 WL 2637344, at *2 ("When reviewing a fee application, a district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours' from the fee calculation." (alteration in original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997))). To obtain an award of attorneys' fees, a petitioner must provide contemporaneous time records that support the date work was performed, the nature of the hours expended, and the work done. *See Raja v. Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022) (explaining that the party seeking attorneys' fees "must prepare and submit to the district court contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (internal citation and quotation marks omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records . . . ."); *Morales v. Fine Design Masonry, Inc.*, No. 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024) (noting that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done" (first quoting *Maldonado v. Srour*, No. 13-CV-5856, 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016); and then quoting *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 250–51 (E.D.N.Y. 2020))), *report and recommendation adopted*, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024). Block billing, "the practice of lumping multiple distinct tasks into a single billing entry — is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja*, 43 F.4th at 87 (citing *Restivo v. Hessemann*, 846 F.3d

547, 591 (2d Cir. 2017)); *see Abularach*, 2025 WL 405986, at *8–9 (recognizing that while block billing is permissible if the court can meaningfully review the hours, courts may reduce total time when billing includes excessive or administrative work). However, "the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours" and is "permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Raja*, 43 F.4th at 87 (quoting *Restivo*, 846 F.3d at 591). "In determining the first component of the lodestar — the number of hours reasonably expended — the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (quoting *Raja*, 43 F.4th at 87), *cert. denied*, 144 S. Ct. 490 (2023). "[T]he district court also 'has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Raja*, 43 F.4th at 87).

Plaintiffs have provided sufficiently detailed records showing the breakdown of the hours billed in this case. The total number of hours billed in this matter was 169.5 hours of work over four years with three Plaintiffs involving multiple motions, conferences, and initial discovery requests. (Billing Summary Chart.) The Court finds this reasonable because "[c]ourts in this circuit have approved fees where the attorneys billed similar numbers of hours in FLSA and NYLL default cases." *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at *15 (E.D.N.Y. Mar. 1, 2021) (concluding that 106 hours billed was reasonable in a default judgment action involving one plaintiff and litigated over a period of two years), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Mar. 23, 2021); *Baltierra v. Advantage Pest Control Co.*, No 14-CV-5917, 2015 WL 5474093, at *13 (S.D.N.Y. Sep. 18, 2015) (approving fees for 108.2 hours billed in an FLSA and NYLL default

judgment case involving three plaintiffs where the defendant withdrew the answer); *cf. Sanchez Flores*, 2024 WL 1051161, at *15 (recommending a 25 percent reduction in hours in a case involving one plaintiff, in which the defendant failed to appear, answer or respond to the complaint.) (citation omitted).

**C. Lodestar method**

The lodestar is "calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at 183–84). The Court calculates the lodestar for each timekeeper by multiplying the number of hours reasonably expended by the applicable reasonable hourly rate. Accordingly, consistent with the analysis above, the Court calculates the lodestar for Ms. Callahan by multiplying her total hour (169.5) by the reduced hourly rate ($275), resulting in an award of $46,612.50 in fees. Thus, KA Investigations owes Plaintiffs $46,612.50 in attorneys' fees.

**D. Costs**

Plaintiffs argue that they are entitled to $725 in costs consisting of filing and service fees. (Pls.' Mem. 12; Billing Summary Chart.)

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (alteration in original) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). As with attorneys' fees, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs." *Id.*

The Court finds that Plaintiffs' requested costs are reasonable and supported by adequate documentation. Plaintiffs' request for costs covers only "reasonable out-of-pocket expenses . . . which are normally charged fee-paying clients," are of the type of expenses typically incurred by an attorney, and these costs are supported by adequate documentation.

The Court therefore grants Plaintiffs' request for costs in the amount of $725. *Id.* (quoting *Reichman*, 818 F.2d at 283). The Court therefore grants Plaintiffs' request for costs in the amount of $725.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for default judgment and damages. The Court (1) grants Plaintiffs' motion for unpaid overtime and spread of hours pay; and (2) denies Plaintiffs' motion for minimum wage and Wage Theft Protection Act violations. The Court awards Plaintiffs damages in the amount of (1) $24,160.5. to Coombs, consisting of $22,675 in unpaid wage claims and $1,485 in spread of hours pay; $62,079 to Gittens, consisting of $59,321 in unpaid wage claims and $2,758 in spread of hours pay; $73, 943 to Pantry, consisting of $70,376 in unpaid wage claims and $3,567 in spread of hours pay. The Court awards Plaintiffs liquidated damages of $160,182.50 equal to the amount Plaintiffs requested for their unpaid wage and spread of hours claims. Prejudgment interest shall be calculated at the rate of 9 percent per annum. If any amount of the judgment remains unpaid within ninety days after judgment or after the time to appeal has expired if no appeal is pending, Plaintiffs' damages under the NYLL will be increased by fifteen percent in accordance with NYLL § 198(4).[17] In addition, the Court awards Plaintiffs $46,612.50 in attorneys' fees and

---

[17] NYLL § 198(4) provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-5418, 2024 WL 2923945, at *6 (E.D.N.Y. May 21, 2024) (quoting NYLL § 198(4)) , *report and recommendation adopted*, 2024 WL 2891798 (E.D.N.Y. June 10, 2024). The increase applies only to Plaintiffs' damages awarded under the NYLL. *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053, 2023 WL 9603828, at *16 n.13 (E.D.N.Y. Dec. 27, 2023) ("The increase applies only to damages awarded under state law."), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Jan. 30, 2024).

$725 in costs.

Dated: September 4, 2026
Brooklyn, New York

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge